(775 P.2d 194)
No. 62,852

In the Matter of the Marriage of JUDITH ANN SCHONEMAN, *Appellee,* and NORMAN ARNOLD SCHONEMAN, *Appellant.*

Petition for review denied September 26, 1989.

Opinion filed June 2, 1989.

*Nicholas C. Vedros,* of McDowell, Rice & Smith, Chartered, of Kansas City, for the appellant.

No appearance by the appellee.

Before DAVIS, P.J., LEWIS, J., and TERRY L. BULLOCK, District Judge, assigned.

DAVIS, J.: This case involves the question of whether a participant's interest in an Individual Retirement Account is subject to execution by a former spouse for monetary obligations arising out of a prior decree of divorce. On application of the former wife, the trial court ordered the proceeds in the IRA to be liquidated for satisfaction of unpaid maintenance, attorney fees, and other financial obligations. The husband appeals, asserting that his IRA is exempt from execution under K.S.A. 1988 Supp. 60-2308(b). We affirm only that part of the trial court order which

authorizes execution for unpaid maintenance. We reverse as to all other obligations because of the exemption provided for in K.S.A. 1988 Supp. 60-2308(b).

Norman A. Schoneman and Judith Ann Schoneman were divorced on January 26, 1988. The decree of divorce incorporated a separation agreement previously entered into by the parties which required Norman to pay Judith $1,000 per month as maintenance for ten years and to pay $1,800 to Judith's attorney. When Norman fell behind on his maintenance payments and failed to pay Judith's attorney fees, Judith's attorney moved for an order requiring Norman to sell sufficient Payless Cashways stock held in his IRA to satisfy the judgment in her favor. Following a hearing on July 21, 1988, the trial court issued the following order:

"That respondent shall have ten (10) days from today's date to make arrangements to sell or dispose of his Payless Cashways stock which is held in an IRA account at Shawnee Bank and is stock which is not pledged as collateral. That respondent shall liquidate such stock at its fair market value forthwith and after deducting the IRS charges and the bank charges for the withdrawal of the account, the proceeds shall be paid directly to the Office of the Clerk of the District Court for the application towards unpaid maintenance[,] attorney fees, and the satisfaction of other financial obligations owed to the petitioner by the re[sp]ondent."

Prior to 1986, K.S.A. 60-2308(a) provided no exemption for the assets held in an IRA nor were such assets exempt from garnishment under federal law. *Bartlett Cooperative Ass'n v Patton*, 239 Kan. 628, 633-34, 722 P.2d 551 (1986). The Kansas legislature amended the provisions of K.S.A. 60-2308 by adding subsections (b) and (c). L. 1986, ch. 220, § 1. K.S.A. 1988 Supp. 60-2308 now provides:

"(b) Except as provided in subsection (c), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under sections 401(a), 403(a), 403(b), 408 or 409 of the federal internal revenue code of 1954 as amended, shall be exempt from any and all claims of creditors of the beneficiary or participant. Any such plan shall be conclusively presumed to be a spendthrift trust under these statutes and the common law of this state. . . .

"(c) Any plan or arrangement described in subsection (b) shall not be exempt from the claims of an alternate payee under a qualified domestic relations order. . . . As used in this subsection, the terms 'alternate payee' and 'qualified domestic relations order' have the meaning ascribed to them in section 414(p) of the federal internal revenue code of 1954, as amended."

Respondent contends the above statute creates an exemption

for the former spouse only if the decree of divorce recognizes the spouse an an "alternate payee" pursuant to a "qualified domestic relations order." He argues that since the decree in this case does not meet the requirements of a "qualified domestic relations order," K.S.A. 1988 Supp. 60-2308(b) exempts his IRA account from execution.

The Internal Revenue Code defines a "domestic relations order" as follows:

"The term 'domestic relations order' means any judgment, decree, or order (including approval of a property settlement agreement) which—

"(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

"(ii) is made pursuant to a State domestic relations law." I.R.C. § 414(p)(l)(B) (1988).

An "alternate payee" is defined to mean

"any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such a participant." I.R.C. § 414(p)(8).

A "*qualified* domestic relations order" means

"a domestic relations order—

"(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

"(ii) with respect to which the requirements of paragraphs (2) and (3) are met." I.R.C. § 414(p)(l)(A).

Paragraph (2) requires the domestic relations order to specify certain facts, including the percentage of the participant's benefits to be paid to the alternate payee. I.R.C. § 414(p)(2). Paragraph (3) prevents the domestic relations order from altering the amount and form of the plan's benefits. I.R.C. § 414(p)(3).

We agree with respondent that neither the decree of divorce nor the separation agreement incorporated therein qualifies as a "qualified domestic relations order." We do not agree that this prevents his former spouse from attaching his IRA.

The interpretation of a statute presents a question of law, and it is the function of a court to interpret the statute in a manner that will give it the effect the legislature intended. *State ex rel. v. Unified School District*, 218 Kan. 47, 49, 542 P.2d 664 (1975). This purpose "is not discovered by an examination of one sen-

tence or one section, but by a comparison of the pertinent provisions of the various sections, and by construing them in the light of the purpose to be accomplished." *State, ex rel., v. Moore,* 154 Kan. 193, 197, 117 P.2d 598 (1941). In other words:

"[W]e must fairly read the entire context of legislation on the subject, rather than only an isolated section, and consider the object of that legislation and the evils or mischief sought to be prevented or remedied. The general purpose of the legislature as shown by the statute as a whole is of primary importance." *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 452, 436 P.2d 828 (1968).

Once the legislative intent is ascertained, it should be given effect, "even though the literal meaning of the words used therein is not followed." *Willmeth v. Harris,* 195 Kan. 322, 326, 403 P.2d 973 (1965); see *Reeves v. Board of Johnson County Comm'rs,* 226 Kan. 397, 402, 602 P.2d 93 (1979) (same effect).

The object of exemption legislation is clear. In the words of the Supreme Court:

"The whole purpose and policy of our exemption laws has been to secure to an unfortunate debtor the means to support himself and his family . . . . In construing statutory exemptions this court has consistently taken into consideration this purpose and policy. We have by judicial construction excepted from the application of certain statutory exemptions, persons and situations not falling within that purpose." *Mahone v. Mahone,* 213 Kan. 346, 350, 517 P.2d 131 (1973).

Thus, although Kansas Public Employees Retirement System (KPERS) pension funds were statutorily exempt from "execution, garnishment, or attachment or any other process or claim whatsoever," the court held that such funds could be applied to the support of the ex-husband's minor dependent children in satisfaction of his delinquent child support payments. 213 Kan. at 348, 350.

As the court similarly noted in *Mariche v. Mariche,* 243 Kan. 547, 758 P.2d 745 (1988), while discussing a number of cases in which execution, garnishment, or attachment for child support or maintenance was allowed despite the literal language of an exemption statute:

"Kansas cases have consistently held that pension benefits and property exempted by statute ordinarily are not exempt from garnishment for past-due child support ordered in a divorce decree." 243 Kan. at 550.

*Mariche* involves the same statute we consider; however, its focus was subsection (a), not (b) and (c), of K.S.A. 1988 Supp. 60-2308. In discussing subsection (a), the court stated:

"The 'true purpose and policy' of the exemption law at issue here is also clear.

K.S.A. 1987 Supp. 60-2308 is designed to protect the funds necessary to support a pensioner *and his family*. This conclusion is supported by the wording of the statute itself 'that such pension money is necessary for the maintenance of the debtor's support or a family support.' " 243 Kan. at 551.

We believe that K.S.A. 1988 Supp. 60-2308(b) and (c) must also be construed to protect a debtor *and his or her family*. This conclusion is supported by the legislative history of K.S.A. 60-2308(b) and (c), by the technical "terms of art" used in drafting the bill, and by considerations of public policy.

The House Bill adding subsections (b) and (c) to K.S.A. 1988 Supp. 60-2308 was originally proposed to correct a problem that arose when the Kansas exemption statutes were applied in bankruptcy proceedings. Because the existing statutes did not exempt a debtor's right to future payments, a debtor filing for bankruptcy would lose his or her right to receive future spousal maintenance. The bill, as amended by the House Judiciary Committee, solved this problem by allowing debtors to choose the federal exemptions provided in 11 U.S.C. § 522(d)(10) (1982) in addition to those exemptions provided by Kansas statutes. Thus, debtors could retain their right to receive social security benefits, veteran's benefits, disability benefits, alimony, and certain pension benefits.

The Kansas Bar Association expressed concern to the committee that a person's right to receive retirement benefits needed additional protection. The KBA suggested amending K.S.A. 60-2308 "to exempt retirement plan assets from all creditors (except ex-spouses and children entitled to support under a qualified domestic relations order), not just the trustee in bankruptcy." This would protect the assets of retirement plans, keep trustees and employers from being entangled with the trustee in bankruptcy, and avoid adverse federal tax consequences for both the plan and the employer that might accompany seizure of plan benefits. See Minutes of the Senate Committee on Judiciary, April 11, 1986, Attachment I. The Judiciary Committee voted to adopt the KBA's proposed amendments, and these amendments were eventually enacted as K.S.A. 1988 Supp. 60-2308(b) and (c). We find no indication in this legislative history that the legislature intended to provide a debtor with a safe haven for his assets while his obligations to his former spouse and children went unpaid.

Respondent argues, however, a former spouse may garnish for

maintenance or child support only when he or she is named as an "alternate payee" in a "qualified domestic relations order." These terms are terms of art borrowed from the federal Internal Revenue Code. They have precise, technical meanings. Their use in the statute is consistent with the expressed legislative intent of preserving a debtor's right to receive present or future retirement payments under certain qualified plans. Contrary to petitioner's assertions, however, their use does not by negative implication bar a garnishment by a former spouse who is not an "alternate payee" under a "qualified domestic relations order."

A "qualified domestic relations order" refers to an "alternate payee's" right to receive "all or a portion of the benefits payable with respect to a participant under a plan." I.R.C. § 414(p)(1)(A). In other words, the reference is to an "alternate payee's" right to receive a present or future right to retirement payments under certain qualified plans as the assets in a pension plan or IRA are paid out over time. By designating an ex-spouse as an alternate payee, a court granting a divorce is, in effect, able to divide the value of a certain qualified plan by giving the nonparticipating party a present or future right to a specified percentage of the payments.

A "qualified domestic relations order" must meet the requirements of paragraph (p)(3), which prohibits the domestic relations order from altering the amount and form of the plan's benefits. I.R.C. § 414(p)(3). Since an attachment of assets in an IRA would, under the facts of this case, depend on whether the petitioner met his obligations under the decree of divorce, any execution against the IRA following a default would alter the amount or form of the plan's benefits. It would be extremely difficult to draft a "qualified domestic relations order" that would permit a garnishment for past due alimony or child support upon default without altering the amount and form of the plan's benefits.

We hold that where a former spouse seeks execution for past-due maintenance against assets set aside to her former husband in the original divorce decree, K.S.A. 1988 Supp. 60-2308(b) and (c) provide no exemption from execution even though the assets are held in an Individual Retirement Account.

We are unable to reach the same conclusion as to the attorney fees and other financial obligations involved in this case. In

some situations, attorney fees and other obligations may amount to maintenance, but, from the record in this case, we cannot reach this conclusion. Since these obligations are not for spousal maintenance or child support, the funds in the IRA are exempt from execution under K.S.A. 1988 Supp. 60-2308(b).

Affirmed in part and reversed in part.