(795 P.2d 940)

No. 64,105

MARY MCCARTY and TIMOTHY R. EMERT, ADMINISTRATOR C.T.A. OF THE ESTATE OF RALPH L. MCCARTY, DECEASED, *Appellees,* v. STATE BANK OF FREDONIA and CLARENCE A. MCCARTY, *Appellants.*

Opinion filed July 13, 1990.

*David K. Clark*, of Fredonia, for appellant Clarence McCarty.

*Rex A. Lafferty*, of Fredonia, for appellant Bank of Fredonia.

*William J. Kelly*, of Independence, for appellee Mary McCarty.

*Timothy R. Emert*, of Scovel, Emert, Heasty & Chubb, of Independence, appellee pro se.

Before BRAZIL, P.J., LARSON, J., and DAVID S. KNUDSON, District Judge, assigned.

LARSON, J.: Clarence McCarty, the named beneficiary of an individual retirement account held by his deceased brother, Ralph McCarty, appeals from the entry of summary judgment in favor of Ralph's wife, Mary McCarty, in an action to recover the proceeds of the account.

In 1982, Ralph created an IRA pursuant to 26 U.S.C. § 408 (1988), with the Fredonia State Bank. At the time of Ralph's death in 1987, his brother Clarence was the designated beneficiary of approximately $25,000 accumulated in the IRA.

When Ralph died, his probate estate consisted of $5,000 in real property and $5,000 in personal property. Ralph's will left all of his property to his parents and provided that if they did not survive him, all of his property was to be left to his brothers, Clarence and Robert McCarty.

Ralph married Mary McCarty on April 24, 1976. Mary survived Ralph and did not consent to either the IRA beneficiary designation or Ralph's will. Mary, as the surviving spouse of Ralph, and Timothy R. Emert, as administrator c.t.a. of Ralph's estate bring this action to have the IRA beneficiary designation declared invalid and to have the assets of the IRA become a part of Ralph's estate.

The trial court entered summary judgment in Mary's favor by adopting the logic and reasoning of *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P.2d 840, *reh. denied* 192 Kan. 471, 389 P.2d 1 (1964), that Ralph is precluded from transferring away Mary's spousal share without her consent pursuant to K.S.A. 33-101 and K.S.A. 59-602(2).

Clarence appeals. We affirm.

Summary judgment is proper where there is no issue of material fact and the movant is entitled to judgment as a matter of law. *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 756, 740 P.2d 1083 (1987).

The facts in this case are not in dispute. The only issues are questions of law, of which this court has unlimited review. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

*Is Ralph's IRA account subject to and governed by the provisions of K.S.A. 1989 Supp. 9-1215?*

Clarence contends the IRA is either a payable on death (POD) account or a *Totten* trust created in compliance with K.S.A. 1989 Supp. 9-1215, entitling him, as the named beneficiary, to all the proceeds of the account.

K.S.A. 1989 Supp. 9-1215 provides in pertinent part:

"An individual adult or minor, hereafter referred to as the owner, may enter into a written contract with any bank located in this state providing that the balance of the owner's deposit account, or the balance of the owner's legal share of a deposit account, at the time of death of the owner shall be made payable on the death of the owner to one or more persons . . . referred to as the beneficiary or beneficiaries. . . .

"Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated.

"Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of beneficiary. The interest of the beneficiary shall be considered not to vest until the death of the owner.

"No change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the bank and delivered to the bank prior to death of the owner.

. . . .

"As used in this section, "person" means any individual, individual or corporate fiduciary or nonprofit or charitable organization as defined by K.S.A. 79-4701 and amendments thereto."

The present wording of 9-1215 is the result of legislative changes which followed the Kansas Supreme Court's ruling in *Truax v. Southwestern College*, 214 Kan. 873, 522 P.2d 412 (1974), that savings accounts payable to charities upon the death of a depositor were testamentary in character and invalid because they were not executed in compliance with the statute of wills.

The history of this statutory change is well documented in *In re Estate of Morton*, 241 Kan. 698, 769 P.2d 619 (1987), which held that K.S.A. 1986 Supp. 9-1215 (banks), K.S.A. 1986 Supp. 17-5828 (savings and loan associations), and K.S.A. 1986 Supp. 17-2263 (credit unions), which authorize the transfer of property through POD accounts without compliance with the statute of wills, also authorize the disposition of financial institution *Totten* trusts accounts. In *Morton*, Justice Herd opined that the language of K.S.A. 1986 Supp. 9-1215 "is broad enough to show the legislature intended to remove those types of accounts [savings account trusts and POD accounts] from the statute of wills." 241 Kan. at 705-06.

Clarence contends that his brother's IRA simply becomes one of "those types of accounts" whose disposition is governed by 9-1215. Our decision is not so easily reached for we must first consider whether a federally inspired IRA's disposition is mandated by 9-1215 and then, more importantly, whether the rights of a nonconsenting spouse who is effectively disinherited by the beneficiary designation void Ralph's creation of a revocable inter vivos trust with Clarence as the beneficiary.

Mary contends that Ralph's IRA is not a *Totten* trust but a revocable inter vivos trust that may be challenged pursuant to K.S.A. 33-101 and K.S.A. 59-602(2) as interpreted and applied by *Ackers* which was followed in *Newman v. George*, 243 Kan. 183, 755 P.2d 18 (1988).

An IRA is a trust (or custodial account) created for the exclusive benefit of an individual or his or her beneficiaries. 26 U.S.C. § 408(a), 60A Am. Jur. 2d, Pensions and Retirement Funds § 42 (1988). Congress created this program for the sole purpose of permitting eligible individuals to accumulate funds for their own

retirement instead of relying completely upon employer- or government-sponsored retirement programs. 9 Federal Tax Guide Reports, Planning for Your Retirement: IRA's & KEOGH's ¶ 2 (1983).

In order to obtain deductibility for federal income tax purposes of contributions to an IRA, the trust must meet the requirements of 26 U.S.C. § 408(a). Because the State Bank of Fredonia, Kansas, where the IRA was located, did not have trust powers, the involved account was established under the authority of K.S.A. 9-1601, which provides:

"[I]f the governing instrument limits investment of funds to deposit in time or savings deposits in the bank, any bank may act as trustee or custodian of individual retirement accounts established pursuant to section 408 of the federal internal revenue code of 1954, and amendments thereto, or trusts established pursuant to section 401 of the federal internal revenue code of 1954, and amendments thereto, without being issued a special permit to act in such capacity."

Investments under the account were limited to eighteen-month variable accounts or eighteen-month fixed accounts by the individual retirement custodial account agreement between Ralph and the Bank, which appears to be authorized under 26 U.S.C. § 408(h) by the following wording:

"(h) Custodial accounts.—For purposes of this section, a custodial account shall be treated as a trust if the assets of such account are held by a bank (as defined in subsection (n)) or another person who demonstrates, to the satisfaction of the Secretary, that the manner in which he will administer the account will be consistent with the requirements of this section, and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account described in subsection (a). For purposes of this title, in the case of a custodial account treated as a trust by reason of the preceding sentence, the custodian of such account shall be treated as the trustee thereof."

Article IX of the IRA agreement between Ralph and the Bank governs the interpretation and administration of the account by providing:

"This agreement shall be interpreted and administered in a manner that the account established herein will meet the requirements of Section 408(a) of the Code for an individual retirement account (custodial). Except to the extent superseded and controlled by such interpretation of federal law, this agreement will be construed according to the laws of the State of Kansas."

The trial court concluded, and all the parties appear to agree, that the IRA herein involved, even though its investments are more limited than is required by the federal law, is a trust. This is supported by the agreement and case law defining a trust. *Shumway v. Shumway*, 141 Kan. 835, 842, 44 P.2d 247 (1935), described the three essential requirements in creating a trust as (1) an explicit declaration and intention to create a trust; (2) definite property or subject matter of the trust; and (3) the subsequent holding and handling of the subject matter by the trustee as a trust. Each of these elements is present here. Following the federal law that the "custodian of such an account shall be treated as the trustee," it is clear the IRA must be treated as a trust.

Ralph had the specific right to withdraw all of the funds in the custodial account. ARTICLE IV Distributions states: "1. The Depositor shall have the right to receive any part of, or the balance in, the custodial account at any time upon written notice to the Custodian."

Complete right of withdrawal is equivalent to having unrestricted control over the funds, making the trust revocable by Ralph at all times during his lifetime. It is thus clear that the IRA herein involved must be considered and construed as a revocable inter vivos trust under the laws of Kansas.

The issue then becomes whether the IRA (revocable inter vivos trust) is sufficiently similar to a POD account and a *Totten* trust to be governed by the provisions of 9-1215. While we affirm the trial court, we do not agree with its conclusion that the IRA in question falls within the definition of "those types of accounts" as defined in 9-1215. "The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason. [Citation omitted.]" *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989).

A POD account is a contract whereby funds are deposited in a financial institution for the benefit of another and are payable upon the death of the depositor to the named beneficiary. The depositor retains direct control over the account. Because the POD account is based on a contract, the beneficiary's claim to the proceeds of the account is founded on a third-party beneficiary theory. 241 Kan. 698, Syl. ¶¶ 7, 8.

A *Totten* trust is created by depositing funds in a financial institution as "trustee" for certain named beneficiaries. The depositor can withdraw the funds or revoke the trust, and the beneficiaries' rights to the trust funds arise only upon the depositor's death. 241 Kan. at 701. The disposition of the funds upon the depositor's (trustee's) death from a *Totten* trust is identical to that of a POD account although a *Totten* trust is based on trust principles rather than contract rights. 241 Kan. 698, Syl. ¶ 8.

The IRA differs from both the POD account and *Totten* trust because it is a creature of federal law. 26 U.S.C. § 408. It is subject to special rules that limit a depositor's control, including amount of deposits, limited investment decisions, and taxation penalties for prohibited withdrawals. An IRA in Kansas is entitled to special protection. For example, pursuant to K.S.A. 1989 Supp. 60-2308(b), an IRA is protected from attachment by creditors, although under K.S.A. 1989 Supp. 60-2308(c), it is subject to the claims of an alternate payee under a qualified domestic relations order. An IRA may be garnished by a former spouse seeking maintenance and child support awarded in a divorce decree. *In re Marriage of Schoneman*, 13 Kan. App. 2d 536, 775 P.2d 194, *rev. denied* 245 Kan. 784 (1989).

An IRA is a structured revocable trust subject to provisions of federal law. Although the Bank herein involved was required, in the absence of trust powers, to limit the investments to its own accounts, many IRA's are invested in securities or managed by investment companies and other non-bank entities.

K.S.A. 9-1215 was enacted by the 1979 legislative session as Senate Bill No. 395. L. 1979, ch. 177, § 1. A review of the House and Senate Journals as well as the minutes of the House and Senate Committee which favorably reported the bill shows the legislation was requested by the Kansas Bankers Association to authorize POD deposits for the convenience and estate planning assistance of bank customers. "The Senate Committee thought it such a good idea, that even in the absence of such request, they made the same kind of POD instrument available to savings and loan associations and credit unions." Minutes of House Committee on Commercial and Financial Institutions,

March 20, 1979. There is no legislative history which shows the bill was intended to apply to or govern the disposition of IRA's.

*Truax* is not specifically mentioned in the legislative history of Senate Bill No. 395 but it is clear, as Justice Herd stated in *Morton*, 241 Kan. at 705, that the legislation changed the result in future instances with respect to POD accounts. Until and unless the legislature specifically does so, we will not expand 9-1215 to include an IRA in the form of a revocable inter vivos trust established primarily under the auspices of and with the support of federal law.

We specifically hold that K.S.A. 1989 Supp. 9-1215 does not apply to or govern the disposition of Ralph's IRA. The opinion in *Morton* must be confined to its own facts. We distinguish *Morton* on its facts and hold it is not authority for the result Clarence requests. We also note that the rights of a nonconsenting spouse were not involved in *Morton*.

If the legislature chooses to mandate that the rights of surviving spouses should be ignored in the disposition of a substantial portion of many decedent's estates (IRA's, retirement benefits under Keogh plans, I.R.C. § 401[k] plans, or other forms of pension and profit sharing plans) it may do so, but this should only take place after long and deliberate discussions and the realization that the rights of many spouses will be adversely affected.

*Is the IRA subject to the rights of a nonconsenting spouse who was not its beneficiary?*

We have previously decided herein that Ralph's IRA must be considered and treated as a revocable inter vivos trust.

By characterizing the IRA in this manner, we establish the basis for Mary's contention that it is subject to attack by a spouse pursuant to K.S.A. 33-101 and 59-602(2).

K.S.A. 33-101 states:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective."

K.S.A. 59-602(2) prevents a person from willing away from his spouse more than half of his property without the spouse's consent:

"Either spouse may will away from the other half of his or her property, subject to the rights of homestead and allowances secured by statute. Neither spouse shall will away from the other more than half of his or her property, subject to such rights and allowances, unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses, or shall elect to take under the testator's will as provided by law." '

*Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P.2d 840 (1963), held that the transfer of property to a trustee under an agreement whereby the settlor reserved income for life with the power to revoke is valid under G.S. 1949, 33-101 and 67-414 (now K.S.A. 58-2414), subject only to the rights of creditors and the statutory rights of a surviving spouse. The central issue in *Ackers* was whether one spouse may place all of his property into a revocable inter vivos trust, appoint a trustee, name a beneficiary other than his spouse, and thereby prevent his nonresident spouse from taking an interest in his estate.

The *Ackers* court had a clear public policy problem—is the decedent's right to alienate his personal property more important than protecting the statutory rights of his surviving spouse? K.S.A. 33-101 read then as it does today. The court said in *Ackers*, "[I]f the settlor retained the control over the corpus of the trust . . . it was void as to creditors . . . but otherwise it was valid." 192 Kan. at 325. In allowing the spouse to attack the trust, *Ackers* expanded the class of people who may challenge a beneficiary designation of a revocable inter vivos trust to include a spouse asserting spousal rights under G.S. 1949, 59-504, 59-505, or 59-602. The *Ackers* court held:

"We conclude that the husband of a nonresident wife may, by absolute sale, gift or other transfer made in good faith during his lifetime, deprive the wife of her distributive share. However, if the transfer is colorable only and the husband retains the power of revocation, it is fallacious, illusive and deceiving, and will be considered as fraud on the rights of the widow where she is deprived of her distributive share.

"The trust instrument in question reserved to the donor the power of revocation. The donor did not part with dominion over the trust *res* and the widow is not barred from claiming her distributive share of the corpus of the trust under the law of intestate succession. [Citation omitted.]" 192 Kan. at 333.

The Supreme Court ordered the district court to enter judgment directing the trustee to deliver one-half of the corpus to the administrator of the Frank C. Ackers estate.

Because the ultimate beneficiary of the trust after life estates in the donor's daughter and granddaughter was the Kansas University Endowment Association, the contention was made in *Ackers* that Kansas should be committed to the policy of upholding charitable gifts wherever possible. However, the rule that one spouse should not be permitted to defeat the statutory rights of the other by a colorable or illusory conveyance was deemed to be more important, and the court stated: "Public welfare is not enhanced by a husband conveying all of his property to charity, by a colorable instrument, and thus leaving his widow to seek alms." 192 Kan. at 334.

*Ackers* was followed 25 years later in *Newman v. George*, 243 Kan. 183, 755 P.2d 18 (1988). Albert Newman placed all of his assets in a revocable inter vivos trust, designating Jim George as trustee. Albert retained the right to amend, invade the assets, or terminate the trust. The trustee had the power to invade the corpus as necessary for the care of Albert or Loretta, his wife, and was directed to pay them all income during their lives. The ultimate beneficiaries of the trust were Albert's sister, Alice Williams, and Loretta's sister, Rosie Brady, who had cared for Albert and Loretta for years. Loretta was incapacitated and did not consent to the trust.

Albert and Loretta had no children but Loretta had a son from a previous marriage. This son obtained a guardian and conservator for Loretta, who filed suit claiming that under *Ackers* Loretta was entitled to the entire estate. The trial court, the Court of Appeals, and the Supreme Court agreed.

The issue in *Newman* was whether the rule of election is governed by K.S.A. 59-602(2) and K.S.A. 59-603, which would entitle Loretta to one-half of the estate, or whether the rules of intestate succession in K.S.A. 59-504 apply, which would entitle Loretta to the entire estate.

The *Newman* court applied *Ackers* and concluded that when Albert died intestate, Loretta took the entire estate by intestate succession because Albert left no issue and died without a will. 243 Kan. at 188. K.S.A. 59-602(2) and 59-603 did not apply because Albert, like Frank Ackers, died intestate, and those statutes applied only to testate estates. The court acknowledged that its ruling was not consistent with Albert's intention but opined

that the rule of *Ackers* was so well-established that to make an exception would compromise the spousal protection it established. 243 Kan. at 189.

The court rejected an argument by the trust beneficiaries that the trial court was required to make a finding of fraudulent intent on the part of Albert. Albert had provided for his wife in his trust, but because she could not legally consent to its provisions, the court felt bound by the rule set forth in *Ackers* that "if one spouse transfers property without consent of the other spouse and retains the power of revocation, the transfer is 'fallacious, illusive and deceiving, and will be considered as fraud.' 192 Kan. at 333." 243 Kan. at 188-89.

The fact the spouse in *Ackers* was a nonresident and Loretta Newman is a resident makes no difference.

The decisions of *Ackers* and *Newman* clearly apply to the revocable inter vivos trust (IRA) created by Ralph. Ralph's actions are "fallacious, illusive and deceiving, and will be considered as fraud," *Ackers,* 192 Kan. at 333, and fall squarely within the rule announced in *Ackers* as applied in *Newman.*

We hold, as did *Newman,* that the Ralph McCarty IRA is void and invalid. Because Ralph died testate, K.S.A. 59-602(2) and 59-603 apply.

Since the bank paid the balance in the IRA to Clarence prior to the filing of this lawsuit, the trial court's order that "the decedent's assets previously held by the State Bank of Fredonia and all accumulated interest and increase thereon which have been delivered to Clarence McCarty are hereby ordered delivered by Clarence McCarty to the administrator c.t.a. of the estate of Ralph L. McCarty, to be distributed in accordance with the will and the court's interpretation and orders thereon" is affirmed. The administrator c.t.a. of the estate of Ralph L. McCarty is entitled to judgment and interest at the statutory rate against Clarence McCarty.

Affirmed and remanded to the trial court for further action consistent with this opinion.