

# In the
# Missouri Court of Appeals
## Western District

VERN LINSCOTT,

          **Respondent,**

**v.**

JAN S. BADER, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF WILLIAM GENE SHERWOOD,

          **Appellant.**

**WD77184**

**OPINION FILED:**

**NOVEMBER 4, 2014**

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Larry D. Harman, Judge**

**Before Division One: Thomas H. Newton, P.J.,
Lisa White Hardwick, Anthony Rex Gabbert, JJ.**

Jan S. Bader appeals the circuit court's judgment awarding Vern Linscott the proceeds of

William Gene Sherwood's three accounts with KC Fairfax Federal Credit Union (the "Credit

Union). Bader raises four points on appeal. First, Bader argues that the circuit court erred in

declaring that Sherwood did not need to sign his account change card because Kansas law

mandates that any change to a contract making a transfer upon death beneficiary designation

must be made by a signed written instrument. Second, Bader argues that the court erred in

finding that the four cards found in Exhibit 1 taken together constitute a contract which would

have made Linscott the death beneficiary because Kansas law requires a signed instrument to

clearly identify or refer to the unsigned document to integrate the unsigned document into the

contract. Third, Bader argues that the court erred in finding Sherwood's IRA account was governed by a transfer upon death beneficiary contract between Sherwood and the Credit Union because Kansas law excludes IRA accounts from the provisions of its transfer upon death statutes. Fourth, Bader argues that the court erred in finding that Sherwood had clearly expressed his intent to make Linscott his transfer upon death beneficiary to the Credit Union and therefore the Credit Union wrongfully paid Sherwood's accounts to his estate because it is not supported by substantial evidence and is against the weight of the evidence. We affirm in part and reverse and remand in part.

## Factual Background

Sherwood died intestate on January 30, 2012 as a resident of Clay County, Missouri. Bader, a resident of Scottsdale, Arizona, was appointed as administrator of the Sherwood's estate by virtue of Letters of Administration issued by the Clay County Circuit Court.

Prior to his death, Sherwood went to the Credit Union in Kansas City, Kansas to change his death beneficiaries on his payable-on-death (POD) accounts. Sherwood had a checking account, IRA account, and CD with the Credit Union. All three types of accounts had the same account number. Sherwood had no children and Sherwood's brother-in-law and prior POD beneficiary at the Credit Union, George Cooper, had passed away. Linscott, who was Sherwood's longtime neighbor and friend, drove Sherwood to the Credit Union. While at the Credit Union, the appropriate documentation was prepared to make Linscott the POD beneficiary. However, Sherwood failed to place his signature on the same portion of the account card as Linscott's information. Instead, Sherwood signed one card and Linscott filled out an identical one. These two cards, along with previous account change cards, were stapled together by the Credit Union to make one card.

2

After the death of Sherwood, the Credit Union treated the accounts as if they belonged to Linscott and considered Linscott to be the POD beneficiary of Sherwood's accounts. Gloria Oliver, the Credit Union's manager, contacted Linscott to seek his permission to pay a bill of Sherwood's. Linscott granted permission for the Credit Union to pay the bill but indicated that he was granting his permission solely for this bill.

Sometime later, at the request of Bader's counsel, the Credit Union failed to honor the account card designating Linscott as the beneficiary and paid the account funds in the amount of $68,982.42 to Bader as Sherwood's estate administrator. Pursuant to § 473.340, RSMo 2000, Linscott brought a discovery of assets action claiming that the proceeds of the Credit Union accounts were his lawful property. The trial court found that the Credit Union proceeds should have been awarded to Linscott and entered judgment in favor of Linscott in the amount of $68,982.42 plus interest. Bader appeals.

### Standard of Review

On appeal, the trial court's judgment must be affirmed unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *In re Estate of Robertson*, 60 S.W.3d 686, 689 (Mo. App. 2001). "When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Ortmann v. Dace Homes, Inc.*, 86 S.W.3d 86, 88 (Mo. App. 2007). "We defer to the trial court's determinations as to the credibility of witnesses." *Id.*

### Payable on Death Accounts

Bader argues in her first point that the trial court erred in declaring that Sherwood did not need to sign the account change card as he had clearly orally expressed his intent to make

3

Linscott his transfer upon death beneficiary. Bader contends that KAN. STAT. ANN. § 17-2263 (2007), mandates that any change to the contract making a transfer upon death beneficiary designation be made by a signed written instrument.[1] We find no error.

First, we note that Kansas substantive law governs this nonprobate transfer case. Section 461.079.1, RSMo 2000, states that a beneficiary designation for a nonprobate transfer that purports to have been made and which is valid under the law of another state may be executed and enforced in Missouri. Here, the Credit Union operates only in Kansas. Sherwood opened an account in Kansas with the Credit Union and designated a POD beneficiary. Thus, Kansas substantive law governs.

Under Kansas law, an individual may enter into a written contract with any credit union located in Kansas providing that the balance of the individual's account at the time of the individual's death shall be made payable to a beneficiary. § 17-2263. Furthermore, "[n]o change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the credit union…" *Id.* Thus, the first part of § 17-2263 sets forth that an individual can set up a POD account with a credit union by entering into a written contract with the credit union. Later in the statute, it establishes how an account holder can change his designated beneficiary on the POD account. Essentially, the primary dispute in this case is not whether Sherwood entered into a written contract with the Credit Union setting up a POD account; instead, the dispute is whether Sherwood changed his designated beneficiary in accordance with the Credit Union's policy.

---

[1] KAN. STAT, ANN. § 17-2263 applies to Credit Unions, § 17-5828 applies to Savings and Loan Associations, and § 9-1215 applies to Banks. While there are three separate statutes, the wording used for each statute is the same except the names of the financial institutions in which the statute applies.

In her deposition, the manager of the Credit Union testified that it was the Credit Union's policy that an account holder must fill out an account change card in order to change a designated beneficiary. On the front of the account change card, there is a place where the account owner fills out his account and personal information. There is also a place where the owner checks which action it is requesting from the Credit Union (i.e. POD/Trust Beneficiary change). On the back side of the account change card, there is a place for the beneficiary's information and a place for the account holder to sign and date.

In this case, Sherwood filled out the front of the card and Linscott filled out the backside of a different account change card. Thereafter, the Credit Union stapled those two cards together with previous account change cards. Under this scenario, the Credit Union manager testified that the beneficiary change is invalid because Sherwood did not sign and date the back of the card. As a result of this alleged deficiency, the Credit Union ultimately determined that Linscott was not the POD beneficiary and awarded the account proceeds to Sherwood's estate.

Even though the Credit Union ultimately determined that Linscott was not the POD beneficiary, there is substantial evidence on the record to support the trial court's determination that Linscott was the POD beneficiary. Here, the Credit Union's actions prior to and after the death of Sherwood suggest its account change policy may have been different than what the manager testified to or was simply not followed in this case. First, the Credit Union manager testified that it is the Credit Union's policy that when an account card is improperly filled out that a new card is sent to the account holder notifying him of the error. However, no evidence was produced by either the Credit Union or any other party showing that the Credit Union notified Sherwood of the alleged deficiencies in his account change card. Second, the Credit Union stapled all of the account changes cards on file together, suggesting that the two cards

5

were recognized as valid like the other two previous valid account change cards. Third, after Sherwood's death, the Credit Union treated and even recognized Linscott as the POD beneficiary. The Credit Union's manager contacted Linscott asking for his approval to pay an outstanding bill of Sherwood's as she believed that Linscott was the beneficiary. Also, there were Credit Union documents produced at trial that stated on Sherwood's account "POD Vern Linscott (changed 7/2/10)."

Furthermore, Linscott testified that he went with Sherwood on July 2, 2010 so that Sherwood could make the POD beneficiary change because Sherwood's previous beneficiary had passed away. Linscott further testified that he had been Sherwood's friend and neighbor for forty years. Additionally, the record reflects as an uncontroverted fact that Sherwood had no heirs-in-law remaining after the death of his brother-in-law.

Moreover, a properly filled out signature card is not always required to change a POD beneficiary. Instead, a party's intent is legally sufficient. In *Campbell v. Black*, 844 P.2d 759 (Kan. App. 1993), Campbell wrote a one-sentence letter to two financial institutions asking the banks to change her accounts to reflect her as the sole owner on the accounts. *Id.* at 761. The bank considered her action sufficient even though Campbell did not fill out the proper change forms. *Id.* at 763. However, the banks did not honor her request because of the existence of a voluntary conservatorship. *Id.* The Kansas Court of Appeals held that Campbell's intent from her contemporaneous will and letters to the financial institutions was clear. *Id.* The Court concluded that Campbell's request was legally sufficient to change the POD accounts. *Id.*

While we recognize that, unlike Campbell, Sherwood died intestate, there are other factors in this case that would suggest that Sherwood's intent was clear—he wanted Linscott as the POD beneficiary. First, Linscott testified that he believed it was Sherwood's intent for him to

be the POD beneficiary and for that reason Sherwood had Linscott drive him to the Credit Union to make the change. Second, Linscott further testified that he filled out the back side of an account change card with his personal information and Sherwood filled out the front side of a different account change card. This accounted for the absence of Sherwood's signature on the card with Linscott's information. Third, the Credit Union's actions prior to and after Sherwood's death support the assertion that Sherwood's intent was to name Linscott as the POD beneficiary. Thus, there is substantial evidence on the record to support the trial court's conclusion that Sherwood's intent was to have Linscott be the POD beneficiary.

Therefore, with the Credit Union's actions prior to and after Sherwood's death, as well as Linscott's testimony, there is substantial evidence on the record to support the trial court's determination that Linscott was the designated POD beneficiary. Thus, we find no error. Point one is denied.

### General Contract Principles

In her second point on appeal, Bader argues that the trial court erred in finding that the four account cards found in Exhibit 1, taken together, constituted a contract because general Kansas contract law requires a signed instrument to clearly identify or refer to the unsigned document to integrate the unsigned document into the contract. We find no error.

A POD account is based on contract. *McCarty v. State Bank of Fredonia*, 795 P.2d 940, 944 (Kan. App. 1990). To establish a POD account, a prospective account holder enters into a written contract with the credit union. § 17-2263. Here, there is no disputing that Sherwood and the Credit Union entered into a written contract establishing a POD account. The dispute in this case is whether all four account cards constituted a contract between Sherwood and the Credit Union.

7

While Bader argues general Kansas contract law should apply, the statutory language of § 17-2263 and the case law applying the statute is controlling in this dispute. Section 17-2263 provides that an account holder may change his POD beneficiary as long as it is executed in the form and manner provided by the Credit Union. Furthermore, as we discussed and concluded in point one, the Credit Union's actions prior to and after Sherwood's death evidenced that Sherwood executed the beneficiary change in the form and manner provided by the Credit Union. Such evidence supports the trial court's conclusion that the four cards taken as a whole constituted one contract between Sherwood and the Credit Union.

We note that the wording of the statute on how to change a POD beneficiary appears to give a credit union freedom to decide its formality on the matter. Despite this freedom, courts have not always required an account holder to comply with the formal requirements provided by a credit union for changing a POD beneficiary. *See Campbell*, 844 P.2d at 763 (considering the intent of the account holder, and other documents, in deciding whether a change in beneficiary was made, even though account holder did not comply with formal requirements of the financial institution). As the trial court's conclusion follows § 17-2263 and Kansas case law, we find that the trial court did not error in finding that the four account cards found in Exhibit 1, taken together, constituted a contract. Point two is denied.

### Sherwood's IRA Account

In Bader's third point on appeal, she argues that the trial court erred in finding Sherwood's IRA account was governed by a transfer upon death beneficiary contract between Sherwood and the Credit Union because that finding erroneously declared the law, is not supported by substantial evidence, and was against the weight of the evidence. Bader contends that Kansas law excludes IRA accounts from the provisions of its POD statutes because IRA

8

accounts are revocable inter vivos trusts. We find that the court erred in awarding Linscott the proceeds of Sherwood's IRA account because such a finding is not supported by substantial evidence.[2]

The trial court awarded Linscott the proceeds of Sherwood's IRA account because it found that the four account cards as a whole constituted a contract governing all three of the accounts. The court based this part of the judgment on one answer from the Credit Union's manager.

> Q. [Linscott's counsel] is asking you if all three of these accounts are governed by Exhibit 6, the account card.
>
> [Credit Union Manager]: I have to check the IRA account. I think that's the one that had Cooper on there and they took Cooper off. Gosh. Yes.

The manager previously testified, however, that the IRA account is not governed by the account cards and opening an IRA account required filling out different forms. With this contradictory testimony being the lone piece of evidence supporting the court's conclusion, we cannot conclude that the court's judgment is supported by substantial evidence. In fact, after examining the record, there is substantial evidence to support the conclusion that Linscott is not the IRA beneficiary.

First, the account cards themselves support the finding that the Linscott is not the IRA beneficiary. Handwritten on the front side of one of the account cards are the words: "Remove George Cooper POD Deceased." Handwritten on the front side of another account change card says: "Chg POD."

---

[2] As Bader's argument regarding the lack of substantial evidence is dispositive of this point, we express no opinion as Bader's other arguments in point three.

9

Furthermore, on the backside of the account card that was used to add Cooper as POD/Trust Beneficiary there are three boxes that can be checked to designate which account to change: 1) Payable on Death (POD)/Trust Beneficiary, 2) All Accounts, 3) Designate Specific Accounts.  However, on the backside of the account card bearing Linscott's name there is only one account designation available—Payable on Death (POD)/Trust Account.  The handwritten notes and the account designation suggest that Linscott was designated as a POD beneficiary but not the IRA beneficiary.  Matter of fact, there is nothing on the account cards that even mentions Sherwood's IRA account.

Second, the record contains a letter from Ascensus, a company that processes the Credit Union's IRA accounts, failing to recognize Linscott as the IRA beneficiary.  After the death of Sherwood, Ascensus sent Linscott a letter.  The letter asked Linscott for the death certificate of Cooper, who was listed as the sole beneficiary of Sherwood's IRA.  The letter also asked Linscott for the names and addresses of all legitimate and adopted children of Sherwood.  After asking Linscott for this information the letter states: "If there are no surviving children meeting the preceding description, the IRA monies will be paid to the William G. Sherwood Estate."  Thus, there is nothing in the letter that even remotely suggests or infers that Linscott is the IRA beneficiary.

Third, there are three Credit Union account documents in the record that state: "POD Vern Linscott (Chg'd 7/2/10)."  However, none of these account documents state that Linscott is also the IRA beneficiary.  Instead, these documents are further proof that Linscott is the POD beneficiary.

As we previously found in point one, the record is replete with evidence supporting the conclusion that Linscott is the POD beneficiary.  What is missing, absent from the manager's

10

contradicting testimony regarding the account cards, is evidence supporting the court's conclusion that Linscott was also the IRA beneficiary. In reading the court's judgment, any discussion of the IRA account is absent and it appears that because the court found Linscott to be the POD beneficiary that he must also be the IRA beneficiary. In fact, the few times the court references the IRA accounts it uses one of two phrases: "including his IRA account" or "including the IRA funds." It appears from the judgment that the IRA account proceeds were a mere afterthought, despite the IRA account being valued at over $25,000. Therefore, with the record lacking substantial evidence to support the court's conclusion that Linscott was the IRA beneficiary, we find that the court erred. Point three is granted.

### Insufficiency of the Evidence

In Bader's last point on appeal, she argues that the trial court erred in finding the decedent had clearly expressed his intent to make Linscott his transfer upon death beneficiary to the Credit Union and had wrongfully paid Sherwood's accounts to his Estate because it is not supported by substantial evidence and is against the weight of the evidence. Bader contends that the only evidence of Sherwood's expression of his intent was the contradictory testimony of Linscott. We find no error.

"This Court defers to the trial's court's credibility determinations." *Kelley v. Widener Concrete Const., LLC*, 401 S.W.3d 531, 539 (Mo. App. 2013). "That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court[.]" *Watson v. Moore*, 8 S.W.3d 909, 911 (Mo. App. 2000). As fact finder, the trial court is free to believe all, none, or some of a witness's testimony. *McCormick v. Cupp*, 106 S.W.3d 563, 569 (Mo. App. 2003).

11

In support of her argument, Bader states that there is only one vague and uncertain statement from Linscott regarding Sherwood's intent. We disagree. Linscott's testimony as to Sherwood's intent is anything but vague and uncertain. Linscott testified in part:

> [Linscott's Counsel]. Did [Sherwood] tell you where you were going?
> [Linscott]. Yes, he did.
>
> Q. What did he say?
> A. He said, I want you to ride over to the Credit Union in Fairfax with me.
>
> Q. And did he tell you what you were going to do that day?
> A. Yes.
>
> Q. Did he tell you what you were going to do at the Fairfax Credit Union that day?
> A. Yes. He said that since his brother-in-law that had been his, on his DOA, [sic] that he would want me, to put me on there for the things that I've done for him.
>
> Q. When you say, put you on there, what was he referring to, sir?
> A. His, the account that he had in the Credit Union.
>
> Q. When was the visit to the KC Fairfax Credit Union?
> A. This was on July 2nd of 2010.
> …
>
> Q. Did Mr. Sherwood tell you—after you left the Credit Union that day, did Mr. Sherwood tell you that he believed that you had accomplished the task that you set out to do by naming you a POD beneficiary on his accounts?
> [Objection made by Bader's counsel and overruled by court]
> A. Yes, he did, and he said he was happy to make me the beneficiary as the POD beneficiary on his accounts.
> …
>
> Q. When you and Mr. Sherwood left the Credit Union that day, did you think you had accomplished a task that you set out to do and have you named as the POD beneficiary on Mr. Sherwood's accounts?
> A. Yes, sir, I did.
> …

Q. Do you believe it was the intent of Mr. Sherwood that you should be the POD beneficiary of his accounts at KC Fairfax Federal Credit Union?

[Objection made by Bader's counsel and overruled by court]

A. Yes, I do.

…

Q. On July 2, 2010, did Mr. Sherwood tell you that he wanted to go to, take you to the Credit Union to make you a beneficiary of his account then?

[Objection made by Bader's counsel and overruled by court]

A. Yes, he did.

With this evidence on the record, the court could conclude that it was the intent of Sherwood to make Linscott his POD beneficiary. As exhaustively covered throughout this opinion, the Credit Union's actions and account documents, along with the Credit Union's manager's testimony, suggests that the Credit Union was also aware of Sherwood's intent to put Linscott as his POD beneficiary.

Finally, we note that Bader alleges that her objections in Linscott's testimony above were erroneously overruled. Bader, however, has failed to make those evidentiary rulings a "Point Relied On" in her brief and thus cannot be considered by this Court.

Therefore, the court did not err in finding that Sherwood had clearly expressed his intent to make Linscott his POD beneficiary to the Credit Union because Linscott testified of Sherwood's intent and the court is free to believe all, none, or some of Linscott's testimony. Point four is denied.

We conclude, therefore, that the circuit court did not err in finding that Linscott was the POD beneficiary because the Credit Union's actions prior to and after Sherwood's death, as well as Linscott's testimony, support the trial court's finding. We further conclude that the court did not err in finding that the four account cards constituted a contract between Sherwood and the Credit Union because the court's conclusion is supported by § 17-2263 and Kansas case law. We

13

also conclude that the court did not err in finding that Sherwood had clearly expressed his intent to make Linscott his POD beneficiary because it was supported by Linscott's testimony and the court is free to believe all, none, or some of his testimony. Lastly, we conclude that the trial court erred in awarding Linscott the proceeds of the IRA account because there is not substantial evidence on the record to support the court's finding. We affirm the circuit court's judgment as it relates to points I, II, and IV. We reverse the circuit court's judgment at it relates to point III and remand to the trial court to enter judgment in accordance with this opinion.

_____
Anthony Rex Gabbert, Judge

All concur.

14