No. 59,998

LORETTA LAGAL NEWMAN, by and through her duly appointed Guardian and Conservator, Stanley R. Ausemus; Stanley R. Ausemus, the duly appointed Administrator of the Estate of Albert Newman, deceased; and Roy U. Jordan, Guardian ad litem for Loretta Lagal Newman, an incapacitated person, *Appellees,* v. JIM GEORGE, Trustee of the Albert Newman Revocable Trust Agreement dated February 24, 1983; ALICE WILLIAMS; and ROSIE BRADY, *Appellants.*

(755 P.2d 18)

Opinion filed June 3, 1988.

*Thomas A. Krueger,* of Krueger & Shaw, of Emporia, argued the cause and was on the brief for appellant Jim George.

*Keith A. Greiner,* of Keith A. Greiner, Chartered, of Emporia, argued the cause for appellants Alice Williams and Rosie Brady.

*Stanley R. Ausemus,* of Emporia, argued the cause, and *Roy U. Jordan,* of Emporia, was with him on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is an action by Loretta Newman, the widow of Albert Newman, by her guardian ad litem, Roy Jordan, and by Stanley Ausemus, her guardian and conservator and administrator of the estate of Albert Newman, against Jim George, the trustee of the Albert Newman Revocable Trust, and Alice Williams and Rosie Brady, two beneficiaries of the trust. Defendants George, Williams, and Brady appeal a summary judgment setting aside a revocable trust.

The facts are not in dispute by the parties. Albert Newman and Loretta Newman had been married for many years when Albert died intestate on March 19, 1983. In their later years, Albert and Loretta were cared for by Alice Williams, Albert's sister, and

Rosie Brady, Loretta's sister. Both sisters continued to care for Albert after Loretta was placed in a rest home. Both sisters were joint owners with rights of survivorship of several of Albert's and Loretta's bank accounts.

On February 24, 1983, several weeks before he died, Albert created a revocable inter vivos trust, designating Jim George as trustee. All assets placed in the trust were those acquired during the marriage; most came from Albert's and Loretta's joint accounts. All but two of the accounts in which the sisters, Brady and Williams, had joint ownership were transferred to the trust. The two accounts were later transferred to the trust by the sisters after Albert's death.

Under the terms of the trust, Albert retained the right to amend or terminate the trust at any time before his death. He reserved the right to withdraw any or all assets for himself. Loretta was granted no power under the trust. She did not consent to the trust, nor did she at any time waive her statutory rights to Albert's estate.

The trust also provided that the income from the trust was to go to Albert and Loretta during their lives. The trustee was given authority to invade the corpus of the trust to provide for the care of Albert and Loretta in the event Albert was unable to act in his own behalf. Any remainder after their death was to be divided between Williams and Brady. From the commencement of the trust, George has distributed an average of $1,622.00 a month for the care of Loretta.

After Albert's death, the total estate of Albert Newman consisted of the following:

a. Albert Newman Trust—$112,560.36.

b. Certificate of deposit No. 5014, titled Albert Newman or Loretta Newman or Rosie Brady, as joint tenants with right of survivorship—$10,000.00 (paid by Rosie Brady to the trustee on April 29, 1983).

c. Accrued interest on certificate of deposit No. 5014—$434.91 (paid by Rosie Brady to the trustee on April 29, 1983).

d. Checking account No. 301450, titled Albert Newman or Loretta Newman or Rosie Brady, as joint tenants with the right of survivorship—$6,500.00 (paid to the trustee by Rosie Brady).

e. Checking account No. 301450 was kept open with balance of $554.36 after the payment in paragraph d above.

f. Life insurance of $2,616.68, beneficiary—Loretta Newman. Funds were deposited in checking account No. 301450 July 7, 1983, for the benefit of Loretta Newman, together with her social security benefits.

Albert and Loretta had no children during their marriage, but Loretta had a son from a previous marriage. Loretta's son petitioned the court for the appointment of Ausemus as guardian and conservator for Loretta and administrator of Albert's estate. Ausemus filed suit, claiming Loretta was entitled to the entire estate under *Ackers v. First National Bank of Topeka,* 192 Kan. 319, 387 P.2d 840 (1963), *reh. denied* 192 Kan. 471, 389 P.2d 1 (1964). The trial court agreed and held Loretta was entitled to judgment as a matter of law. George was thus ordered to deliver the trust corpus to Ausemus. George and the sisters appeal.

Summary judgment is proper where there is no issue of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 1987 Supp. 60-256(c); *Richardson v. Northwest Central Pipeline Co.,* 241 Kan. 752, 756, 740 P.2d 1083 (1987). The parties agree that summary judgment was appropriate. They disagree as to whom it should have been granted. The parties also agree that the rule enunciated in *Ackers* applies. They disagree only on the interpretation of *Ackers.*

Appellants argue *Ackers* shows the rights of a spouse who survives an intestate decedent and has not consented to a revocable trust are governed by K.S.A. 59-602(2) and K.S.A. 59-603 rather than K.S.A. 59-504. Appellants argue the rule of election properly applies, making Loretta entitled to only half of Albert's estate, rather than the entire estate as the district court ordered.

Appellees reply that *Ackers* clearly states the law of intestate succession applies, and Loretta is thus entitled to the entire trust because Albert left no child or issue.

Let us examine *Ackers.* It is a case similar to the one at bar in that a widow protested a revocable trust created without her consent. The widow, Bessie, married Frank Ackers in 1942 but did not return with him from California when he moved back to his home in Kansas. The couple had no children, but Frank had a daughter from a previous marriage. Except for one visit Bessie made, husband and wife did not see each other again until 1958,

when Bessie traveled to Kansas to sue Frank for separate maintenance. Frank cross-petitioned for divorce, but died while the suit was pending.

Frank had created a trust in 1955 consisting of a one-fourth interest in Kansas real estate he had inherited from his father during the marriage. He conveyed the balance of his property, consisting of stocks and bonds, to the trust before he died. Under the terms, the income from the trust was to be paid to Frank for life, then to his daughter for life, then to her daughter for life, with the corpus going to charity. Frank reserved the right to revoke or amend the trust and to invade the corpus.

Bessie and the administrator of Frank's estate sued to set aside the trust. Frank's daughter, granddaughter, and the beneficiary charity joined the trustee as additional parties defendant. The trial court upheld the trust in its entirety.

Several questions were presented on appeal. The first was whether the revocable trust was void. Prior to 1949, the statute pertaining to personal property trusts decreed: "All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect." G.S. 1935, 33-101. We construed this to mean that a power to revoke made a trust "to the use of" the grantor, and such a trust was therefore void. 192 Kan. at 323.

In 1949, however, the statute was amended, providing:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, *regardless of motive, as to all past, present, or future creditors; but otherwise shall be valid and effective.*" G.S. 1949, 33-101.

See K.S.A. 33-101.

The *Ackers* court noted the amendment had not been previously interpreted, but found the intent and purpose of the legislature to be clear: "If the settlor retained the control over the corpus of the trust such as the right to remove the trust assets or the right to revoke the trust, it was void as to creditors *regardless of motive* but otherwise it was valid." It held since there were no creditors the trust was valid and could not be challenged *"unless for or by the wife in defense of her rights under the provisions of G.S. 1949, 59-504, 59-505, or 59-602."* (Emphasis supplied.) 192 Kan. at 325.

The court thus agreed to entertain Bessie's arguments that public policy, prior law, and the legislative intent behind the three statutes overcame the clear language of G.S. 1949, 33-101. The statutes were then analyzed without regard to the effect of the trust.

This court noted that, under G.S. 1949, 59-505, Bessie, *had she ever been a resident of Kansas during the marriage,* would have been entitled to one-half the real estate owned by Frank, as she did not consent to its disposition. However, *under the facts of the case,* G.S. 1949, 59-505 did not apply because Bessie had never been a resident of Kansas. 192 Kan. at 326-27.

G.S. 1949, 59-602(2) was determined to not distinguish between resident and nonresident spouses, and thus could apply to Bessie. We also noted that while the statute ensured a spouse would receive at least as much as he or she would have received had the deceased died intestate, it did not extend such protection to the children of the deceased. Thus, children of an intestate parent would receive half the estate, but could not challenge a will which left them nothing. Only a spouse was protected from unbridled testamentary discretion.

We held Bessie did not have a right to half the estate under G.S. 1949, 59-602(2), since this statute applies to testamentary power. Frank died intestate. There is no right of election in an intestate estate. Election applies only to a will. See K.S.A. 59-603. G.S. 1949, 59-602(2) did not apply *under the facts of Ackers.* The court made the following statement which is controlling:

"We conclude that the husband of a nonresident wife may, by absolute sale, gift or other transfer made in good faith during his lifetime, deprive the wife of her distributive share. However, if the transfer is colorable only and the husband retains the power of revocation, it is fallacious, illusive and deceiving, and will be considered as fraud on the rights of the widow where she is deprived of her distributive share.

"The trust instrument in question reserved to the donor the power of revocation. The donor did not part with dominion over the trust res and the widow is not barred from claiming her distributive share of the corpus of the trust under the law of intestate succession. (G.S. 1949, 59-504)." 192 Kan. at 333.

Frank Ackers was survived by a wife and a daughter. Thus the wife was entitled to only one-half his property under G.S. 1949,

59-504. Had Frank had no children, his wife would have been entitled to the entire estate. The *Ackers* court arrived at the foregoing conclusion by following *Poole v. Poole,* 96 Kan. 84, 89, 150 Pac. 592 (1915), which held:

"[Where] there is a voluntary transfer or conveyance by which the husband reserves to himself an interest in or a power to dispose of the property, it may be declared void as against the widow and she may participate in its distribution upon the theory that the title still remained in the husband."

The *Ackers* decision created an additional exception to G.S. 1949, 33-101, holding a revocable trust valid but subject to challenge by creditors and "by the wife in defense of her rights under the provisions of G.S. 1949, 59-504, 59-505, or 59-602." 192 Kan. at 325.

Turning now to the case at bar, K.S.A. 59-505 does not apply because no real estate was transferred. K.S.A. 59-602(2) and 59-603 do not apply because Albert, like Frank, died intestate and those statutes apply only to testate estates. Therefore, K.S.A. 59-504 is the applicable law and Loretta should take by intestate succession the entire estate since the deceased left no issue.

Appellants claim if the court in *Ackers* really meant 59-504 to apply, it would have granted Frank's daughter the other half of the trust. This argument is incorrect. Children do not have the same protection as a surviving spouse. Frank Ackers' daughter had no right to challenge the trust arrangement. This court's exception to 33-101 extended only so far as to include a nonconsenting *spouse* within the protection afforded a creditor from the consequences of a revocable trust.

Appellants next argue the district court erred in failing to make a finding of fraudulent intent on the part of the decedent, contending such a finding is dictated by *Ackers.* They point out the widow in *Ackers* was deprived of any property by the terms of the trust, and that the trial court found this was one of the purposes of the trust. Loretta, on the other hand, is provided for by her husband's trust, to the extent that the trustee may invade the corpus if necessary for her care.

It is true that the facts of this case are much more difficult than those in *Ackers.* But the rule of law there enunciated is the same. There, the court held if one spouse transfers property without consent of the other spouse and retains the power of revocation,

the transfer is "fallacious, illusive and deceiving, and will be considered as fraud." 192 Kan. at 333. Thus, there was no need to prove fraud. It was implied from the creation of the revocable trust without consent.

The difficulty in this case is that Loretta Newman was under disability and could not consent. Under these circumstances, Albert Newman should have made a will rather than use the trust technique. The rule of *Ackers* has been the law of this state since 1963. Thus, it is a part of the body of law utilized by estate planners since that time. To reverse *Ackers* to serve the needs of this estate and carry out the intent of Albert Newman would be a bad precedent which would compromise the spousal protection set out in *Ackers*.

We hold the Albert Newman Trust invalid. The joint tenancy property placed in the trust by Rosie Brady after the death of Albert Newman should be returned to the joint tenancy accounts for determination of ownership. All other property in the estate is inherited by Loretta Newman by intestate succession.

The judgment is affirmed.