(811 P.2d 58)
No. 65,777

HELEN SNODGRASS, Individually and as Administrator of the Estate of MARION E. SNODGRASS, deceased, *Appellee/Cross-Appellant,* v. LYNDON STATE BANK, *Defendant,* and MARTHELLE KELLER, *Appellant/Cross-Appellee.*

Opinion filed May 10, 1991.

*Janet C. Walsh* and *Patrick G. Walsh,* of Burns & Burns, P.A., of Lyndon, for appellant/cross-appellee.

*Thomas H. Sachse,* of Green & Sachse, Chartered, of Ottawa, for appellee/cross-appellant.

*Charles N. Henson,* of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for *amicus curiae* The Kansas Bankers Association.

Before RULON, P.J., REES and ELLIOTT, JJ.

RULON, J.: Marthelle Keller, defendant, appeals the district court's grant of summary judgment to Helen Snodgrass, administratrix of the estate of Marion Snodgrass, plaintiff, which declared invalid a payable-on-death (POD) account established by Marion naming Marthelle as beneficiary. We reverse and remand with directions.

We must decide if a POD account, on which a third party is designated as beneficiary, is subject to attack by a nonconsenting surviving spouse in defense of his or her statutory right to a distributive share of a deceased spouse's intestate estate.

The material, undisputed facts are as follows:

Helen and Marion Snodgrass were married in 1962. No children were born of the marriage. Marion suffered from and was under psychiatric care for chronic severe depression. On October 5, 1989, Helen told Marion she was leaving their home due to his deteriorating mental condition and eccentric behavior.

The next morning, October 6, 1989, as Helen was about to leave the house to do some errands, Marion got out of bed, went to the garage, and left the house in the couple's other car. Helen and Marion then drove to Franklin Savings Association in Lyndon, Kansas, in separate vehicles. While waiting for Franklin Savings Association to open, they discussed withdrawing money from their joint tenancy account. Marion stated he had deposited into the account a $21,000 inheritance from his father and approximately $7,000 from a disability settlement received from the Veterans' Administration. Helen stated she had deposited into the account approximately $5,000 in inheritance from her father and sister and nearly $8,000 from an insurance settlement.

Once inside the savings and loan, Helen and Marion went to separate tellers. Helen withdrew $15,000 and used the amount to open a joint checking account with her daughter at Franklin Savings Association. Marion withdrew $33,000 and went to Lyndon State Bank where he opened a POD account naming his sister Marthelle Keller as the beneficiary. According to the POD contract between Marion and Lyndon State Bank, Marion retained the rights to change the beneficiary; withdraw all or any part of the deposit; change the type of account; and sell, transfer, assign, pledge, or hypothecate the account or any portion of it. Marthelle was not aware of her designation as beneficiary until she was served in this lawsuit.

Helen moved out of the home she shared with Marion on October 9, 1989. When Helen and Marion made their respective withdrawals from their joint account, Helen did not know what Marion was planning to do with the money he withdrew. Marion and Helen did not have a prenuptial agreement and neither filed a separate maintenance or divorce action before he died intestate on December 4, 1989. Marion's probate estate, according to the inventory filed by Helen as administratrix, was worth $72,456.03, including the POD account. Nonprobate assets, property held in joint tenancy with Helen, were valued at $63,033.14. Helen is Marion's sole heir.

Helen filed a chapter 60 action requesting the court to declare the POD account void and to order the funds paid into Marion's estate. Ultimately, both she and Marthelle, a named defendant, filed motions for summary judgment. The district court entered

judgment in favor of Helen, holding that although POD accounts are authorized by K.S.A. 1990 Supp. 9-1215, Marion's establishment of such an account naming his sister as beneficiary was fraud implied by law against Helen. The district court ordered Lyndon State Bank to pay the balance of the account to Helen, as administratrix of Marion's estate.

Marthelle appeals the district court's judgment invalidating the POD account, and Helen appeals other issues which we need not reach.

Marthelle principally argues that the language of K.S.A. 1990 Supp. 9-1215 excludes POD accounts from the operation of K.S.A. chapter 59, the Kansas Probate Code. Marthelle specifically contends that a POD account results from a contractual relationship which may exclude the statutory rights of a surviving spouse. Finally, Marthelle distinguishes POD accounts from revocable inter vivos trusts, which under *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P.2d 840 (1963), are subject to a surviving spouse's rights of inheritance.

On the other hand, Helen contends the legislature intended only to exclude POD accounts from the operation of the statute of wills, not the entire probate code. Helen therefore contends that, following *Ackers*, the district court properly voided Marion's POD account as a fraud upon Helen's right of intestate succession to Marion's estate.

*Amicus curiae* The Kansas Bankers Association essentially agrees with Marthelle that POD accounts are excluded from all the provisions of the Kansas Probate Code and that, because a POD account is contractual in nature, *Ackers* and its progeny are not applicable to POD accounts.

Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See *Crooks v. Greene*, 12 Kan. App. 2d 62, Syl. ¶ 1, 736 P.2d 78 (1987). Neither Marthelle nor Helen contest the district court's finding that this case is ripe for summary judgment. Therefore, the only issue on appeal is whether the district court entered judgment for the proper party as a matter of law. The first step in resolving this issue is determining whether K.S.A. 1990 Supp. 9-1215 exempts POD accounts from the operation of the entire probate code.

K.S.A. 1990 Supp. 9-1215, which authorizes POD accounts, was initially enacted in 1979. L. 1979, ch. 177, § 1. The current version of the statute reads as follows:

**9-1215. Contracts for payment to beneficiaries upon deposit account owners' deaths; rights of owner during lifetime; change of beneficiary.** An individual adult or minor, hereafter referred to as the owner, may enter into a written contract with any bank located in this state providing that the balance of the owner's deposit account, or the balance of the owner's legal share of a deposit account, at the time of death of the owner shall be made payable on the death of the owner to one or more persons or, if the persons predecease the owner, to another person or persons, hereafter referred to as the beneficiary or beneficiaries. If any beneficiary is a minor at the time the account, or any portion of the account, becomes payable to the beneficiary and the balance, or portion of the balance, exceeds the amount specified by K.S.A. 59-3003, and amendments thereto, the moneys shall be payable only to a conservator of the minor beneficiary.

"*Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated.*

"Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of beneficiary. The interest of the beneficiary shall be considered not to vest until the death of the owner.

"No change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the bank and delivered to the bank prior to the death of the owner.

"For the purposes of this section, the balance of the owner's deposit account or the balance of the owner's legal share of a deposit account shall not be construed to include any portion of the account which under the law of joint tenancy is the property of another joint tenant of the account upon the death of the owner." (Emphasis supplied.)

Although not discussed in the legislative history of the statute's enactment, 9-1215 appears to have been enacted to legislatively overrule the decision of the Kansas Supreme Court in *Truax v. Southwestern College*, 214 Kan. 873, 522 P.2d 412 (1974). See *In re Estate of Morton*, 241 Kan. 698, 705, 769 P.2d 619 (1987). In *Truax*, the Supreme Court found three POD savings accounts to be testamentary in character and invalid because they were not executed in compliance with K.S.A. 59-606 (Corrick), our state's version of the statute of wills. 214 Kan. at 874-75, 883. When the legislature enacted the statute authorizing POD ac-

counts in 1979, the pertinent portions of the statute read as follows:

"**9-1215. Contracts for payment to beneficiaries upon deposit account owners' deaths; rights of owner during lifetime; change of beneficiary.** A natural person, adult or minor, hereinafter referred to as the owner, may enter into a written contract with any bank or trust company located in this state whereby the balance of the owner's deposit account at the time of death of the owner shall be made payable on the death of the owner to another person or persons, hereinafter referred to as the beneficiary or beneficiaries. Should any beneficiary be a minor at the time the account, or any portion thereof, becomes payable to him or her and such balance, or portion thereof, exceeds four thousand dollars ($4,000) such moneys shall be payable only to a conservator of such minor beneficiary. *Such transfers shall not be considered testamentary and shall not be subject to the provisions of chapter 59 of the Kansas Statutes Annotated.*

"Every such contract authorized by this section shall be deemed to contain a right on the part of the owner during his or her lifetime both to withdraw funds on deposit in such account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of beneficiary. The interest of the beneficiary shall be deemed not to vest until the death of the owner." (Emphasis supplied.) K.S.A. 1979 Supp. 9-1215.

The emphasized language above differs from that of the current version. See K.S.A. 1990 Supp. 9-1215. The current language resulted in part from an amendment approved by the Legislature in 1980. See L. 1980, ch. 166, § 2. The language "shall not be considered testamentary and shall not be subject to the provisions of chapter 59 of the Kansas Statutes Annotated" was changed to "shall not be considered testamentary or· be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated."

As we understand the legislative history, the 1980 amendment appears to have originated from the legislature's concern about the use of POD accounts to disinherit surviving spouses. After hearing testimony on this possible effect of POD accounts, the House Committee on Commercial and Financial Institutions reported favorably to the full House the following amendment to the POD account statute in House Bill No. 3140: "shall not be considered testamentary or subject to the provisions of chapter 59 of the Kansas Statutes Annotated but shall be subject to the right of election and unless the will indicates otherwise, shall

abate ratably with specific bequests." See Minutes of the House Committee on Commercial and Financial Institutions, February 28, 1989. The apparent effect of this language would have made any POD account on which the designated beneficiary was someone other than the surviving spouse subject to that spouse's election to take his or her statutory intestate share in lieu of a will to which he or she did not consent, pursuant to K.S.A. 59-603.

The above amendment, however, was lost in action taken on House Bill No. 3140 subsequent to the House Committee report. The Senate Judiciary Committee amended the bill by striking the clause "but shall be subject to the right of election." See Sen. J. 1980, p. 1212. The House then requested a conference committee on the bill, which was agreed to by the Senate. See House J. 1980, p. 1669; Sen. J. 1980, p. 1408. However, it is not clear from the conference committee reports when or why the POD account statute was amended to read "or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated." Sen. J. 1980, p. 1561; House J. 1980, p. 1865. From our research, it appears that minutes of the conference committee do not exist.

With this legislative history in mind, we must construe K.S.A. 1990 Supp. 9-1215 to determine if the legislature intended to exclude POD accounts from only the execution formalities of chapter 59 (K.S.A. 59-606) or from the entire body of law under chapter 59.

"The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs; the court must give effect to the legislature's intent 'even though words, phrases or clauses at some place in the statute must be omitted or inserted.' [Citations omitted.] In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citations omitted.] Ordinarily, courts presume that by changing the language of a statute the legislature intends to change its effect. This presumption, however, may be strong or weak according to the circumstances, and may be wanting altogether in a particular case. [Citation omitted.]" *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

Marthelle argues the legislative intent behind the current version of the POD account statute is to exclude POD accounts from

all the provisions of the Kansas Probate Code and specifically to avoid the application of *Ackers* to these bank accounts.

We need not revisit *Ackers* here except to note that our Supreme Court recently reaffirmed the *Ackers* doctrine in *Newman v. George,* 243 Kan. 183, 755 P.2d 18 (1988). The *Newman* court stated, "The *Ackers* decision created an additional exception to G.S. 1949, 33-101, holding a revocable trust valid but subject to challenge by creditors and 'by the wife in defense of her rights under the provisions of G.S. 1949, 59-504, 59-505, or 59-602.' 192 Kan. at 325." 243 Kan. at 188. This court recently construed an individual retirement account as a revocable inter vivos trust under Kansas law that may be invalidated to protect the rights of a nonconsenting surviving spouse, pursuant to *Ackers* and *Newman. McCarty v. State Bank of Fredonia,* 14 Kan. App. 2d 552, 795 P.2d 940 (1990).

In examining a POD account, strong similarities with the revocable trusts at issue in *Ackers* and *Newman* are clearly evident. With a POD account, the person who establishes the account remains its owner until his or her death. The owner may withdraw any funds from the account until his or her death and may change the beneficiary. The contract between Marion and Lyndon State Bank establishing Marion's POD account also provided that Marion could change account types and sell, transfer, assign, pledge, or grant a security interest in the account. The designated beneficiary acquires no interest in a POD account until the death of the owner. The owner's power to withdraw funds and assign or pledge funds from the account is similar to the grantor's powers of revocation and amendment in a revocable inter vivos trust. But a POD account is created by a contractual relationship between the financial institution and the owner, and the beneficiary claims the funds through third-party beneficiary theory rather than through trust principles. *Morton,* 241 Kan. at 704.

Marthelle contends this court's opinion in *McCarty,* 14 Kan. App. 2d 552, "inferred, if not directly held, that a POD account would *not* be subject to a spousal attack." *McCarty,* however, considered only whether K.S.A. 1990 Supp. 9-1215 (then K.S.A. 1989 Supp. 9-1215) governed the disposition of a decedent's individual retirement account and did not determine or even consider a nonconsenting surviving spouse's rights regarding a POD

account. *McCarty* simply stated that *Morton*, 241 Kan. 698, the Supreme Court case which recognized the validity of *Totten* trusts in Kansas, did not provide authority for extending K.S.A. 1990 Supp. 9-1215 to individual retirement accounts. 14 Kan. App. 2d at 559.

Against the above backdrop of case law and legislative history, we have examined the language contained in K.S.A. 1990 Supp. 9-1215 which provides that "[t]ransfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated." We conclude that the legislature intended this language to exclude POD accounts from all provisions of the Kansas Probate Code, thus shielding such an account from the statutory rights of a surviving nonconsenting spouse to any interest therein. The statutory language is clear and unambiguous, and if the legislature intends otherwise, the statute should be amended to clearly protect the interest of a surviving nonconsenting spouse.

The district court erred in not following the clear and unambiguous statutory language which excludes POD accounts from all the provisions of the Kansas Probate Code.

We need not address other issues presented for our consideration in light of the above discussion.

We reverse and remand with directions that the district court grant summary judgment to Marthelle consistent with the provisions of this opinion.