No. 67,419

BETTY TALIAFERRO, *Appellant/Cross-Appellee*, v. ADORIA M. TAL-
IAFERRO, individually and as trustee of the Declaration of Trust
for the Taliaferro & Browne Trust U.T.A. March 29, 1990,
*Appellee/Cross-Appellant,* and MICHAEL SCOTT TALIAFERRO,
TALIAFERRO & BROWNE, INC., ALYCE TALIAFERRO RAWLINS,
LINDA M. BUCKNER, ARTHUR P. TALIAFERRO, ANTONIO R. TAL-
IAFERRO, JOSLYN TALIAFERRO BAZIN, SHERRI LYNN (TALIAFERRO)
ALEXANDER, VEDA KAYE (TALIAFERRO) DREW, MARK RAWLINS,
WAYNE RAWLINS, and SHILOW NEW SITE CHURCH OF FRED-
ERICKSBURG, VIRGINIA, *Defendants.*

(843 P.2d 240)

Opinion filed December 11, 1992.

*Joseph S. Davis, Jr.,* of Watson, Ess, Marshall & Enggas, of Olathe,
argued the cause, and *Steven B. Moore,* of the same firm, and *Benjamin
F. Farney,* of Olathe, were with him on the briefs for appellant/cross-
appellee.

*Curtis L. Tideman,* of Lathrop & Norquist, of Overland Park, argued the
cause, and *John L. Vratil,* of the same firm, was with him on the briefs
for appellee/cross-appellant.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by a widow seeking to invalidate two revocable inter vivos trusts created by her husband, now deceased, and have the trust assets transferred to the testate probate estate wherein she is the residuary legatee. The district court ordered the corporate stock held by one trust transferred to the estate. The widow appeals from the district court's refusal to (1) invalidate the trust and (2) order certain life insurance proceeds transferred to the probate estate. The trustee cross-appeals from the district court's judgment ordering the transfer of all of the corporate stock to the probate estate.

In entering the summary judgment the district court made the following findings of uncontroverted facts:

"1. Will Cedric Taliaferro died, testate, on September 1, 1990. He was survived by his wife, Betty Taliaferro. No children had been born to the couple, and Betty Taliaferro is the sole heir-at-law of the decedent. They were residents of Johnson County, Kansas.

"2. The will executed by the decedent left his entire estate to Betty Taliaferro, with the exception of a piece of property at the Lake of the Ozarks, which he left to his brother.

"3. The will was executed on March 29, 1990. At the same time, Mr. Taliaferro executed a trust instrument creating the 'Taliaferro & Browne Trust,' hereinafter referred to as the T&B Trust.

"4. The T&B Trust was a revocable, inter vivos trust. Mrs. Taliaferro did not consent to the trust.

"5. Mr. Taliaferro was the owner of 100% of the stock of Taliaferro & Browne, Inc., an engineering firm. Upon execution of the 'Declaration of Trust for Taliaferro and Browne Trust,' he transferred 100% of the stock of Taliaferro & Browne, Inc. to the T&B Trust, reserving to himself during his lifetime all income from the trust.

"6. Other than the stock of Taliaferro & Browne, Inc. the only asset of the trust is the proceeds from a life insurance policy on Mr. Taliaferro's life. The life insurance policy was purchased and owned by Taliaferro & Brown, Inc., and the T&B Trust was named as the beneficiary. $598,093.12 in death benefits under the life insurance policy have been paid to the trust.

"7. The Declaration of Trust was amended twice by Mr. Taliaferro. The first amendment, executed on July 6, 1990, named Adoria Taliaferro, Mr. Taliaferro's niece, to succeed him as trustee of the T&B Trust. The second amendment, executed July 10, 1990, provided that the net income of the T&B Trust will be paid to Mr. Taliaferro during his lifetime. Upon his death, the net income is to be paid to Betty Taliaferro during her life.

"8. Other provisions of the trust are largely irrelevant to this controversy, but a key clause of the trust provides that $327,000.00 is to be poured over into a second trust also established on March 29, 1990, which provides for a number of cash bequests to various individuals and entities. The second trust, the Will C. Taliaferro Trust, is not a subject of these motions for summary judgment."

These findings of uncontroverted facts are not challenged on appeal. The district court then held: (1) the T&B trust was valid; (2) the life insurance proceeds were the lawful assets of the trust; and (3) the corporate stock should be transferred to the probate estate. Summary judgment was entered accordingly. The judgment was certified pursuant to K.S.A. 1991 Supp. 60-254(b) to be subject to immediate appeal.

The parties concede that it is established Kansas law that the surviving spouse may reach assets in a revocable inter vivos trust set up by the deceased spouse but to which the surviving spouse did not consent when necessary to obtain for the survivor his or her lawful distributive share of the decedent's estate. They disagree as to what trust assets should be transferred to the decedent's probate estate.

The district court's decision and the parties' respective positions rest upon a trilogy of Kansas appellate court decisions. These are *Newman v. George*, 243 Kan. 183, 755 P.2d 18 (1988); *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P.2d 840 (1963); and *McCarty v. State Bank of Fredonia*, 14 Kan. App. 2d 552, 795 P.2d 940 (1990). A careful analysis of each of these three cases is essential to our determination of the issues herein.

In *Ackers v. First National Bank of Topeka*, 192 Kan. 319, the deceased husband, Frank, died *intestate*. Frank had a child from his first marriage. Frank's second wife, Bessie, had never been a resident of Kansas. At the time of Frank's death, an action for separate maintenance/divorce was pending. Frank created a revocable inter vivos trust and transferred the bulk of his assets thereto. Bessie brought the action to bring the trust assets into Frank's probate estate.

The district court found:

" 'The trust and all of the property conveyed to the trustee by Frank C. Ackers, including the real estate, was made without consideration and without the knowledge or consent of his wife, Bessie M. Ackers. One of his several purposes for creating the trust was to permit himself to enjoy the

benefits and the income of the property during his own lifetime and to deprive his wife, Bessie M. Ackers, of any right therein at the time of his death, one-half of which would have otherwise gone to her under the law of descent and distribution.' " 192 Kan. at 322-23.

First, the *Ackers* court construed G.S. 1949, 33-101 (now K.S.A. 33-101), which provides:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective."

The court held that since there were no creditors, the trust was valid.

Next, the *Ackers* court considered Bessie's rights under G.S. 1949, 59-505 (now K.S.A. 59-505), which provides:

"Also, the surviving spouse shall be entitled to receive one-half of all real estate of which the decedent at any time during the marriage was seized or possessed and to the disposition whereof the survivor shall not have consented in writing, or by a will, or by an election as provided by law to take under a will, except such real estate as has been sold on execution or judicial sale, or taken by other legal proceeding: *Provided,* That the surviving spouse shall not be entitled to any interest under the provisions of this section in any real estate of which such decedent in his lifetime made a conveyance, when such spouse at the time of the conveyance was not a resident of this state and never had been during the existence of the marriage relation."

Bessie's nonresidency was held to bar her claims under this statute.

The *Ackers* court then considered whether Bessie acquired any rights under G.S. 1949, 59-504 (now K.S.A. 59-504), which provides in pertinent part:

"If the decedent leaves a spouse and a child, or children, or issue of a previously deceased child or children, one-half of such property shall pass to the surviving spouse."

or G.S. 1949, 59-602(2) (now K.S.A. 59-602[2]), which provides:

"Either spouse may will away from the other half of his property, subject to the rights of homestead and allowances secured by statute. Neither spouse shall will away from the other more than half of his property, subject to such rights and allowances, unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses, or shall elect to take under the testator's will as provided by law."

Note: K.S.A. 59-602 was significantly amended in 1992. Said amendments will be discussed later in this opinion. The quoted form of the statute is the form applicable herein.

The *Ackers* court then noted that neither statute makes any distinction between resident and nonresident spouses. The court then stated:

"We have now reached the crux of this controversy. If a spouse can during his or her lifetime make an absolute conveyance of all separately owned property, both real and personal, and thus defeat the right of a nonresident spouse to inherit under the provisions of G.S. 1949, 59-504, may the right be defeated by a trust conveyance which the grantor reserves the right to revoke?" 192 Kan. at 329.

The *Ackers* court noted that the states which had decided the issue of the effect of a revocable inter vivos trust on the surviving spouse's right to inherit were about equally divided in their conclusions. The *Ackers* court then concluded:

"We conclude that the husband of a nonresident wife may, by absolute sale, gift or other transfer made in good faith during his lifetime, deprive the wife of her distributive share. However, if the transfer is colorable only and the husband retains the power of revocation, it is fallacious, illusive and deceiving, and will be considered as fraud on the rights of the widow where she is deprived of her distributive share.

"The trust instrument in question reserved to the donor the power of revocation. The donor did not part with dominion over the trust *res* and the widow is not barred from claiming her distributive share of the corpus of the trust under the law of intestate succession. (G.S. 1949, 59-504.)" 192 Kan. at 333.

The trustee was then ordered to deliver one-half of the trust assets (plus increments and less applicable expenses) to the administrator of Frank's estate.

We shall next consider *Newman v. George*, 243 Kan. 183. Albert Newman died *intestate* survived by his widow, Loretta. Albert had no children. At the time of his death, the bulk of Albert's assets were in a revocable inter vivos trust. No real estate was transferred to the trust. Loretta had never consented to the trust and was, in fact, disabled and incapable of consenting thereto. After Albert's death, Loretta was to receive, during her lifetime, all income from the trust.

The *Newman* court relied on *Ackers* in holding: (1) K.S.A. 59-505 did not apply because no real estate was transferred to the

trust; and (2) neither K.S.A. 59-602 nor K.S.A. 59-603 applied as those statutes were applicable only to testate estates (the latter statute concerns a surviving spouse's election to take under or against a will). The *Newman* court further held that Loretta's rights were fixed by K.S.A. 59-504. As the surviving spouse of Albert, who died intestate without issue, Loretta was thus entitled to all of Albert's estate.

The *Newman* court then concluded:

"It is true that the facts of this case are much more difficult than those in *Ackers*. But the rule of law there enunciated is the same. There, the court held if one spouse transfers property without consent of the other spouse and retains the power of revocation, the transfer is 'fallacious, illusive and deceiving, and will be considered as fraud.' 192 Kan. at 333. Thus, there was no need to prove fraud. It was implied from the creation of the revocable trust without consent.

"The difficulty in this case is that Loretta Newman was under disability and could not consent. Under these circumstances, Albert Newman should have made a will rather than use the trust technique. The rule of *Ackers* has been the law of this state since 1963. Thus, it is a part of the body of law utilized by estate planners since that time. To reverse *Ackers* to serve the needs of this estate and carry out the intent of Albert Newman would be a bad precedent which would compromise the spousal protection set out in *Ackers*.

"We hold the Albert Newman Trust invalid. The joint tenancy property placed in the trust by Rosie Brady after the death of Albert Newman should be returned to the joint tenancy accounts for determination of ownership. All other property in the estate is inherited by Loretta Newman by intestate succession." 243 Kan. at 188-89.

We shall next consider *McCarty v. State Bank of Fredonia*, 14 Kan. App. 2d 552. Ralph McCarty died *testate* survived by his widow, Mary. Apparently, Ralph had no children, although the opinion does not specifically so state. Ralph's probate estate consisted of $10,000 in real and personal property which was left to his parents. Ralph also had a $25,000 individual retirement account (IRA) in which his brother Clarence was the named beneficiary. Mary did not consent to either the will or the IRA.

The Court of Appeals held that the IRA (1) should be considered and construed as a revocable inter vivos trust and (2) was not subject to the provisions of K.S.A. 9-1215. 14 Kan. App. 2d at 557. Building upon *Ackers* and *Newman*, the Court of Appeals in *McCarty* reasoned:

"The issue in *Newman* was whether the rule of election is governed by K.S.A. 59-602(2) and K.S.A. 59-603, which would entitle Loretta to one-half of the estate, or whether the rules of intestate succession in K.S.A. 59-504 apply, which would entitle Loretta to the entire estate.

"The *Newman* court applied *Ackers* and concluded that when Albert died intestate, Loretta took the entire estate by intestate succession because Albert left no issue and died without a will. 243 Kan. at 188. K.S.A. 59-602(2) and 59-603 did not apply because Albert, like Frank Ackers, died intestate, and those statutes applied only to testate estates. The court acknowledged that its ruling was not consistent with Albert's intention but opined that the rule of *Ackers* was so well-established that to make an exception would compromise the spousal protection it established. 243 Kan. at 189.

"The court rejected an argument by the trust beneficiaries that the trial court was required to make a finding of fraudulent intent on the part of Albert. Albert had provided for his wife in his trust, but because she could not legally consent to its provisions, the court felt bound by the rule set forth in *Ackers* that 'if one spouse transfers property without consent of the other spouse and retains the power of revocation, the transfer is "fallacious, illusive and deceiving, and will be considered as fraud." 192 Kan. at 333.' 243 Kan. at 188-89.

"The fact the spouse in *Ackers* was a nonresident and Loretta Newman is a resident makes no difference.

"The decisions of *Ackers* and *Newman* clearly apply to the revocable inter vivos trust (IRA) created by Ralph. Ralph's actions are 'fallacious, illusive and deceiving, and will be considered as fraud,' *Ackers*, 192 Kan. at 333, and fall squarely within the rule announced in *Ackers* as applied in *Newman*.

"We hold, as did *Newman*, that the Ralph McCarty IRA is void and invalid. Because Ralph died testate, K.S.A. 59-602(2) and 59-603 apply." 14 Kan. App. 2d at 561-62.

Thus, pursuant to K.S.A. 59-602(2), Mary received one-half of Ralph's assets. Because the IRA was held to be void, IRA proceeds not transferred to Mary went to Ralph's parents under the terms of the will.

This trilogy of cases is discussed in an article appearing in the December 1992 Journal of the Kansas Bar Association: Kuether and Thompson, *The Capricious Operation of the Kansas Elective Share: Feast or Famine for the Surviving Spouse*, 61 J.K.B.A. 32 (Dec. 1992).

With this background, we turn to the issues before us.

The first issue in the appeal is whether the district court erred in holding the trust to be valid.

The appellant, in reliance upon *Newman* and *McCarty*, contends that the trust should have been held to be invalid.

The district court herein upheld the validity of the trust based upon the trust validly receiving the life insurance proceeds. The district court stated that under *Ackers* the widow herein would be entitled to whatever share of the corporate stock was necessary to give her one-half of the estate under K.S.A. 59-602(2), and that should be the result herein. However, the district court concluded that *Newman* and *McCarty* required that all corporate stock be transferred to the estate for distribution to the widow as the residuary legatee. The district court was obviously dissatisfied with this result.

It is interesting that *Newman* held the trust therein was invalid based upon *Ackers* and that *McCarty* invalidated the trust therein based upon *Ackers* and *Newman* when the *Ackers* court expressly held the trust therein to be valid and left half of the trust assets intact and in the hands of the trustee. The language in *Ackers* relied on by both subsequent opinions for invalidating the trusts is as follows:

"We conclude that the husband of a nonresident wife may, by absolute sale, gift or other transfer made in good faith during his lifetime, deprive the wife of her distributive share. However, if the *transfer* is colorable only and the husband retains the power of revocation, it is fallacious, illusive and deceiving, and will be considered as fraud on the rights of the widow where she is deprived of her distributive share.

"The trust instrument in question reserved to the donor the power of revocation. The donor did not part with dominion over the trust *res* and the widow is not barred from claiming her distributive share of the corpus of the trust under the law of intestate succession." (Emphasis supplied.) 192 Kan. at 333.

Clearly, under *Ackers*, only the transfer of the assets depriving the surviving spouse of her distributive share was to be "considered as fraud on the rights of the widow." The categorization of the transfer as fraudulent was the legal justification for undoing the transfer of the assets to which the widow was entitled and removing them from the valid trust.

As previously noted, the district court avoided invalidating the trust under *Newman* and *McCarty* by holding the trust was the valid recipient of the life insurance proceeds to which the widow had no right. With or without the insurance proceeds factor, we

hold the trust to be valid and disapprove any language in *Newman* and *McCarty* invalidating the trust in *Newman* and the IRA in *McCarty* (considered as a trust in the opinion). We reaffirm *Ackers'* handling of this issue.

The other issue in the appeal is whether or not the district court erred in holding the life insurance proceeds were lawful trust assets not subject to the widow's claims herein.

Appellant's claim to the insurance proceeds is predicated upon the trust being held to be an invalid entity. The argument is that if the trust is held to be invalid, then it was not a lawful entity to receive the insurance proceeds. The trust would then have been in the same category as a situation where the named beneficiary of a life insurance policy preceded the insured in death. In such case, the proceeds would be distributed in accordance with K.S.A. 40-415, which provides:

"In all cases of the death of the beneficiary in any insurance policy before the death of the insured, and thereafter the insured dies without having named another beneficiary and without having disposed of said insurance by will, then said insurance shall go to the estate of the insured, the same as other property not exempt."

The widow (appellant herein) would then take the proceeds under the residuary clause of the will.

Our resolution of the first issue determines this issue. The trust is valid and there is no legal impediment to its being the beneficiary under the policy.

This brings us to the issue raised in the cross-appeal. The issue is whether the district court erred in ordering all of the corporate stock transferred to the executor of the estate as opposed to as much thereof as necessary to make one-half of the total assets of the estate available to the widow.

We must again look to the trilogy of cases relied on herein. *Ackers* involved an intestate estate. As the deceased had a child, the widow's claim was for one-half of decedent's assets pursuant to K.S.A. 59-504, which provides:

"If the decedent leaves a spouse and no children nor issue of a previously deceased child, all the decedent's property shall pass to the surviving spouse. If the decedent leaves a spouse and a child, or children, or issue of a previously deceased child or children, one-half of such property shall pass to the surviving spouse."

The widow's share would have remained at one-half even if K.S.A. 59-505 had been available to a nonresident spouse or if K.S.A. 59-602(2) concerning limitation on testamentary power had been applicable.

*Newman*, again, involved an intestate estate. This time, however, decedent had died childless. K.S.A. 59-505 did not apply as no real estate was involved. K.S.A. 59-602 was held not to apply as there was no will. Thus, the widow took all of the trust assets.

*McCarty* is the only case in the trilogy to involve a testate estate. K.S.A. 59-602(2) was applied, which (in the form in effect at the time) provided:

"(2) Either spouse may will away from the other half of his or her property, subject to the rights of homestead and allowances secured by statute. Neither spouse shall will away from the other more than half of his or her property, subject to such rights and allowances, unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses, or shall elect to take under the testator's will as provided by law."

The trust (IRA) was held to be invalid by virtue of containing property which was included in the widow's one-half distributive share. The balance of the IRA went to the deceased's parents as legatees under the will. We have previously herein disapproved this holding.

The *McCarty* opinion makes no reference to whether or not the widow filed an election pursuant to K.S.A. 59-603 to take against the will. K.S.A. 59-603 in the form in effect in *McCarty* (and before us) provided:

"The surviving spouse, who shall not have consented in the lifetime of the testator to the testator's will as provided by law, may make an election whether he or she will take under the will or take what he or she is entitled to by the laws of intestate succession; but he or she shall not be entitled to both. If the survivor consents to the will or fails to make an election, as provided by law, he or she shall take under the testator's will."

The cross-appellants assert that a check of the district court files in *McCarty* shows that an election to take against the will was filed. This is not disputed by the cross-appellees. Such fact is consistent with the *McCarty* opinion's application of K.S.A. 59-602(2), which limits the widow to one-half of the property when she takes against the will.

No election to take against the will has been filed herein. The cross-appellant contends that unless such election is filed the widow has no claim against the trust assets. The reason for not filing the election herein is obvious. If the widow were to be successful in invalidating the trust, she would receive all the trust assets, including the insurance proceeds, as the will's residuary legatee plus all bequests to her under the will. She would not be taking against the will, only expanding the estate's assets. If, on the other hand, she files an election to take against the will she is limited to one-half of the assets pursuant to K.S.A. 59-602(2).

At this point, it is appropriate to point out the 1992 amendments to K.S.A. 59-602(2) and K.S.A. 59-603 contained in H.B. No. 2756. The legislative history of the amendments reflects they first arose in 1988 from concern over the result reached in *Newman*. The matter of possible amendment was referred to the Kansas Judicial Council, which recommended the amendments ultimately appearing in H.B. No. 2756.

Under the 1992 amendments, K.S.A. 59-602(2), (3) now provide:

"(2) Either spouse, by will, or other disposition subject to a surviving spouse's right of election, may transfer away from the other, half of such spouse's property, subject to the rights of homestead and allowances secured by statute. Neither spouse, by will, or other disposition subject to a surviving spouse's right of election, shall transfer away from the other, more than half of such spouse's property, subject to such rights and allowances, unless the other shall consent, in writing, executed in the presence of two or more competent witnesses to the will, if any, and shall have consented to any and all other dispositions subject to a surviving spouse's right of election as provided by law, or shall elect to take under the testator's will and all other dispositions subject to a surviving spouse's right of election as provided by K.S.A. 59-603, and amendments thereto.

"(3) The right of election provided in this section shall only apply to dispositions that the surviving spouse did not consent to."

See L. 1992, ch. 79 § 1.

K.S.A. 59-603 as amended in 1992 now provides:

"(a) The surviving spouse, who shall not have consented in the lifetime of the decedent to the testator's will and any and all other dispositions subject to a surviving spouse's right of election as provided by law, may make an election whether such surviving spouse will take under the will and such other dispositions subject to a surviving spouse's right of election

or take what such surviving spouse would be entitled to by the laws of intestate succession were such surviving spouse the surviving spouse of a decedent who leaves a spouse and child; but such surviving spouse shall not be entitled to both. If the survivor consents to the will and all other dispositions subject to a surviving spouse's right of election or fails to make an election, as provided by law, the survivor shall take under the testator's will and all other dispositions subject to a surviving spouse's right of election. The will or other dispositions shall be effective except as to the elected share.

"(b) The election shall be filed in the district court in the case in which the decedent's estate, testate or intestate, is being administered. The court shall have the jurisdiction and venue to order½ of the dispositions, subject to the surviving spouse's right of election, be set aside to the surviving spouse to the extent necessary, pro rata, from among the dispositions subject to the surviving spouse's right of election unless the dispositions otherwise provide the source of payment.

"(c) The right of election provided in this section shall only apply to dispositions that the surviving spouse did not consent to."

See L. 1992, ch. 79 § 2.

The result reached in *Newman* is now legislatively modified. Surviving spouses whose deceased spouses have attempted to deprive them of their one-half share under K.S.A. 59-603 by creation of another disposition such as inter vivos trusts are treated equally regardless of whether or not the deceased died testate or intestate, and whether or not the deceased was childless.

The time for filing an election herein to take against the will has been extended pending resolution of this appeal.

We conclude that the judgment of the district court not requiring the widow to file an election must be reversed as well as that portion of the judgment ordering the trustee to transfer all corporate stock to the executor. On remand, the widow shall be required to file an election. If she elects to take under the will, the trust and its assets are not available to her. If she elects to take against the will, then she is entitled, pursuant to K.S.A. 59-602(2), to take one-half of the assets over which decedent had control at the time of his death (the assets in the estate plus the corporate stock). The district court should determine how much of the corporate stock is subject to transfer to afford the widow her one-half distributive share, less any applicable expenses, and order such transfer.

This result, we believe, is consistent with the provisions of K.S.A. 59-602(2) and K.S.A. 59-603 even prior to the 1992 amendments. K.S.A. 59-602(2), prior to amendment, limited the power of a married person dying testate to dispose of his or her property. Not more than one-half could go to other than the surviving spouse unless he or she consented thereto if the survivor elected to take against the will. The effect of the district court decision herein was to expand the limitation. *Newman* permitted the widow to take all, but involved an intestate estate where K.S.A. 59-602(2) was held to be inapplicable.

*McCarty* did not directly expand the limitations as to the widow as she took the statutory one-half. However, by improperly invalidating the IRA, the *McCarty* opinion expanded the effect of K.S.A. 59-602(2) by nullifying the decedent's disposition as to all IRA funds and causing what should have been the IRA beneficiary's remaining share to be transferred to the estate and distributed in accordance with the terms of the will.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.