(79 P.3d 791)

No. 90,209

IN THE MATTER OF THE ESTATE OF SANDRA JO STEWARD, DECEASED

Opinion filed November 26, 2003.

*Dennis A. White,* of Holton, for appellant.

*Micheal A. Ireland,* of Holton, for appellee.

Before PIERRON, P.J., GREENE, J., and JONES, S.J.

GREENE, J.: During the administration of Sandra Jo Steward's estate, Denny L. Steward, conservator of the estate, filed a petition to determine ownership of certain payable-on-death (POD) accounts after discovering that Mary L. Huggins, the decedent's guardian, as well as Huggins' children and grandchildren, were named as beneficiaries on the accounts. The probate court set aside the POD accounts and ordered the funds to be returned to Steward's estate, subject to disbursement under the laws of intestacy.

Huggins appealed to the district court, alleging that the probate court lacked jurisdiction over her person and the POD accounts. The district court affirmed the findings of the probate court, specifically holding that the probate court had jurisdiction in the matter. Huggins appeals.

*Stipulated Factual Statement*

The parties have submitted an agreed statement pursuant to Supreme Court Rule 3.05 (2003 Kan. Ct. R. Annot. 25). The facts are set out as follows:

"1. In 1987, Denny L. Steward was appointed conservator for Sandra Jo Steward, and Mary L. Huggins was appointed guardian for Sandra Jo Steward. Dennis White was appointed guardian ad litem for Sandra Jo Steward.

"2. A doctor had examined Sandra Jo Steward, and wrote she was totally incompetent to manage her financial affairs or personal affairs.

"3. During the conservatorship, Sandra Jo Steward set up certain Pay on Death accounts and purchased United States savings bonds, and designated Pay on Death beneficiaries with her earnings, all without knowledge or consent of the conservator or approval of the conservatorship court. Most, if not all, of the monies earned by Sandra Jo Steward were never turned over to the conservator during the conservatorship.

"4. Sandra Jo Steward passed away on September 15, 2000.

"5. Denny L. Steward was appointed as administrator of her estate.

"6. The only heirs-at-law of Sandra Jo Steward are her siblings, to-wit:
    Denny L. Steward
    Kaye Snyder
    Larry G. Steward
    Opal Slocum.

"7. That after the death of Sandra Jo Steward, Denny L. Steward became aware of these Pay on Death accounts and bonds, and as conservator filed a motion in the conservatorship court to determine ownership of that property.

"8. The conservatorship court essentially set aside the Pay on Death accounts, and ordered them to be part of the conservatorship estate assets.

"9. Mary L. Huggins appealed the magistrate's decision to the district judge, which found that all assets of Sandra Jo Steward should be accounted for by the conservatorship then paid according to law.

"10. That the conservator then filed his final account in the conservatorship court listing the Pay on Death accounts and bonds and the designated beneficiaries. The court ordered these funds to be transferred to the probate estate.

"11. That these same assets were then inventoried into the estate.

"12. That Denny L. Steward as administrator filed a motion in the estate for the estate court to determine ownership of the Pay on Death property.

"13. That the administrator sent a copy of his Motion to Determine Ownership of Property together with a Notice of Hearing to Mary L. Huggins in care of Dennis A. White.

"14. That Mary L. Huggins had never entered her appearance in the estate case, and was never served with process. Dennis A. White had served as her attorney throughout the conservatorship proceedings.

"15. That Mary L. Huggins had notice of all proceedings in the conservatorship matter, and was represented by Dennis A. White at all times.

"16. That Mary L. Huggins' attorney, Dennis A. White, appeared at the hearing on her behalf for the sole purpose of advising the estate court that it did not have jurisdiction over the person of Mary L. Huggins nor any property on which she was listed as a Pay on Death beneficiary.

"17. That no evidence has ever been produced that Sandra Jo Steward had testamentary capacity or that she received independent advice regarding her money transfers.

"18. The estate court ruled that:

Mary L. Huggins did not have authority, capacity or approval to assist Sandra Jo Steward in setting up Pay on Death accounts; that all instruments executed by Sandra Jo Steward during the conservatorship were void; and that all Pay on Death accounts/bonds belongs to the estate and is subject to disbursement by the probate court to the heirs-at-law.

"19. That Mary L. Huggins appealed the ruling of the estate court to the district judge on the grounds that the estate court did not have jurisdiction over her person or the property she received as a Pay on Death beneficiary.

"20. That the district judge affirmed the decision of the estate court.

"21. That Mary L. Huggins appeals the decision of the district judge for lack of jurisdiction over her person or property."

## Standard of Review

Whether subject matter or personal jurisdiction exists is a question of law over which this court's scope of review is unlimited. See *State v. Stough*, 273 Kan. 113, 116, 41 P.3d 281 (2002) (subject matter); *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 28 P.3d 1033 (2001) (personal).

## The Probate Court Had Jurisdiction Over the Person of the Guardian and the Subject Matter of the Guardianship Activities

Huggins contends that the probate court had no jurisdiction over her or the POD accounts, relying principally upon *Snodgrass v. Lyndon State Bank*, 15 Kan. App. 2d 546, 811 P.2d 58, *rev. denied* 249 Kan. 776 (1991). In *Snodgrass*, our court construed K.S.A. 9-1215, which provided, *inter alia*:

"Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated."

The court specifically held that the legislature intended this language to exclude POD accounts from provisions of the probate code, thus precluding a challenge from a surviving nonconsenting spouse. 15 Kan. App. 2d at 553.

*Snodgrass* and other Kansas authorities cited by Huggins are inapplicable here, however, because they do *not* address a situation where the POD account is established by an incompetent ward, for the benefit of a guardian, from income during a guardianship and conservatorship, without the knowledge of the conservator, and absent any approval of the conservatorship court. The probate and district courts here properly focused upon their jurisdiction over the guardian and the activities incident to the guardianship/conservatorship rather than the nature of the accounts created through the improper conduct of a fiduciary.

The probate code is replete with provisions vesting authority of the court over the person and activities of guardians and conservators. K.S.A. 59-103 provides, *inter alia*:

"(a) Chapter 59 of the Kansas Statutes Annotated may be used:

. . . .

(6) To appoint and remove guardians and conservators for minors, voluntary conservatees and incapacitated persons, *to make all necessary orders relating to their estates, to direct and control the official acts of such guardians and conservators* and to settle their accounts." (Emphasis added.)

K.S.A. 59-3018(a) (repealed in 2002), provided that "a guardian shall be subject to the control and direction of the court at all times and in all things." See its successor, K.S.A. 2002 Supp. 59-3075(a)(1).

Moreover, the probate code circumscribes the conduct and activities of a guardian. K.S.A. 2002 Supp. 59-102(2) and (3) define fiduciaries to include both guardians and conservators. K.S.A. 59-3018 provided:

"It is the general duty of an individual or corporation appointed to serve as a guardian to carry out diligently and in good faith the specific duties and powers assigned by the court. In carrying out these duties and powers, the guardian shall

assure that personal, civil and human rights of the ward or minor whom the guardian services are protected."

See K.S.A. 2002 Supp. 59-3075.

These statutes, particularly when considered as an integral part of the probate code, demonstrate a clear legislative intent for Chapter 59 courts to have sufficient jurisdiction to determine and remedy any and all misconduct of guardians and conservators, and such authority necessarily includes the setting aside of certain transfers, whether testamentary or nontestamentary in nature. To hold otherwise would give license to guardians or other personal representatives to abuse their fiduciary positions with impugnity. None of the cases cited by Huggins has so held. While we fully embrace the *Snodgrass* decision, we decline to hinder the probate court's jurisdiction to prohibit and to remedy conduct by court-appointed fiduciaries, especially when they engage in misconduct or when they profit financially from their fiduciary position.

A somewhat more difficult question of personal jurisdiction would be posed if the nonguardian beneficiaries of the POD accounts had intervened or objected to the court's set-aside order. Since no such party in interest is before us to frame this issue, we decline to reach the issue in this appeal.

Huggins participated in a course of conduct, whether affirmatively or passively, that was beyond if not contrary to her authority as a guardian. The probate court had jurisdiction and specific statutory responsibility to regulate and remedy such conduct. The nature or type of instrument or account chosen by a guardian or conservator to perpetrate fiduciary misconduct, even though a payable-on-death nontestamentary account, will not divest the probate court's jurisdiction to remedy such misconduct.

Affirmed.